## SERVICES AGREEMENT

THIS SERVICES AGREEMENT ("Agreement") is made and entered into as of November 1, 2003 (the "Effective Date") between **North Fulton Medical Center, Inc.,** a Georgia corporation, doing business as North Fulton Regional Hospital ("Hospital") and **Hispanic Medical Management, Inc.,** a Georgia corporation, doing business as Clinica de la Mama ("Company").

## RECITALS:

A.  . Hospital operates an acute care hospital known as North Fulton Regional Hospital ("Facility"), located in Georgia ("State"), and is in need of translation and administration services for its Hispanic patients (the "Services").

B.  Company employs or otherwise contracts with individuals duly qualified and experienced in furnishing the Services (collectively "Company Staff").

C.  Company and Hospital agree that it is in the best interest of Hospital's ability to provide quality patient care in a cost-effective and efficient manner for Hospital to contract with an entity to provide the Services.

NOW, THEREFORE, for and in consideration of the recitals above and the mutual covenants and conditions contained herein, Hospital and Company agree as follows:

1   COMPANY'S OBLIGATIONS.

a.  **Services.** While this Agreement is in effect, Company shall provide Services at Facility as are set forth in Exhibit A attached hereto and made a part hereof.

b.  **Performance.** The Services to be rendered hereunder shall be performed by Company Staff as may be employed by or under contract with Company. At all times while this Agreement is in effect, the Facility's Chief Executive Officer ("CEO") shall have the right to request removal of any such Company Staff if, in the CEO's best judgment, such removal is in the best interests of Hospital. Company hereby agrees to immediately remove any such individual upon receipt of the CEO's request.

c.  **Applicable Standards.** Company and its Company Staff agree that all Services provided pursuant to this Agreement shall be performed in compliance with all applicable standards set forth by law or ordinance or established by the rules and regulations of any federal, state or local agency, department, commission, association or other pertinent governing, accrediting, or advisory body, including the Joint Commission on Accreditation of Healthcare Organizations ("Joint Commission"), having authority to set standards for health care facilities.

P:\USERS\PAT\WORD\DOCU\CONTRACT\FACILDI\CA\CLINICA AGREEMENT 11.03 - REVISED 12.12.03.DOC
[MS Word] 4/18/03

1

Confidential - Not Subject to FOIA

TENET-OIG-00000118

TENET-OIG-00000118

d.     **Company Staff Screening.**  Company shall provide competent Company Staff to meet Facility's needs with regard to Hispanic speaking patients.  Screening by Company shall include, but not be limited to, obtaining the following pertinent information concerning all past employment, licensure, certifications, education, and professional skills of Company Staff:

(1)     Proof of current original licensure and appropriate certification in the State, which licensure and certifications, if any, must be presented to Facility by Company Staff upon reporting for work, per Hospital guidelines.

Proof of a minimum of one year of prior work experience.

(3)     Proof of compliance with applicable immigration laws and maintenance of current I-9 documentation.

(4)     Proof of current PPD, MMR and hepatitis (within one year), record of immunizations, and identified physical limitations.  Company shall maintain current written employee releases from all Company Staff provided under this Agreement to permit Hospital access to their medical file.  Information on physical limitations or impairments and other medical information shall be collected and maintained in accordance with all applicable anti-discrimination laws including, without limitation, the State's Labor Code, the Rehabilitation Act of 1974 and the Americans with Disabilities Act of 1991.

(5)     Minimum of two professional references.

(6)     Company Staff must be able to speak, write, and read the English and Spanish languages sufficiently to communicate with patients and staff and to complete required documentation.

(7)     Proof of successful completion of a drug screening immediately prior to beginning work at Facility.

(8)     Proof that Company Staff has passed a background check as required by Facility regarding any prior criminal convictions.

(9)     Job Description signed by Company Staff.

Proof of attendance at Facility's General Orientation.

Company Staff shall not begin work at Facility until items required in this Section 1.d. (1) through (10) are provided to and approved by the Facility's Human Resources Department.   In addition to the above-listed items, Company Staff will attend Facility's annual ethics training and all other required annual in-service education.

Confidential - Not Subject to FOIA

e.    **Patient Satisfaction Surveys.** Company shall conduct patient satisfaction surveys on a monthly basis. Results of such surveys will be made available to Facility for quality and performance improvement purposes.

f.    **Time Records.**  Company shall record promptly and maintain all information pertaining to Company's performance of duties under this Agreement.    Said documentation shall be submitted to Hospital by the 10th day of the month following the month in which services were rendered to receive payment for the previous month.  If the time log is not received within 20 days of the due date, Company will forfeit compensation for the services rendered in the month previous to the time record due date.  Said documentation shall be substantially in the form attached as Exhibit B and made a part hereof, and shall contain the information requested by Hospital.

g.    **Use of Premises.** Company Staff shall not use, or knowingly permit any other person who is under their direction to use, any part of Facility's premises for any purpose other than the performance of Services for Facility pursuant to this Agreement.

h.    **Representations and Warranties.** Company represents and warrants to Hospital as follows:

(1)    Neither Company nor any of Company Staff is bound by any agreement or arrangement which would preclude Company or any of Company Staff from entering into, or from fully performing the Services required under, this Agreement;

(2)    No Company Staff's license or certification in the State or in any other jurisdiction has ever been denied, suspended, revoked, terminated, relinquished under threat of disciplinary action, or restricted in any way; and

(3)    Neither Company nor any of Company Staff has ever been convicted of a criminal offense related to health care or listed by a federal agency as debarred, excluded or otherwise ineligible for federal program participation.

2.    HOSPITAL'S OBLIGATIONS.

a.    **Equipment, Facilities, Supplies, Utilities and Services.** Hospital shall, at no cost to Company, provide all equipment, facilities, supplies, utilities, including telephone service, and other services, including laundry, linen and janitorial services, as the Hospital shall, in its sole discretion, determine from time to time to be necessary for the performance of the Services.  The parties expressly agree that all items supplied by Hospital pursuant to this Subsection shall remain the exclusive personal property of Hospital.

b.    **Personnel.** Hospital shall employ such non-physician personnel as Hospital deems necessary for the proper performance of the Services or any other Company obligation set forth in this Agreement.

P:\USERS\PAT\WORD\DOCS\CONTRACTS\CLINIC\CLINICA AGREEMENT 11.03 - REVISED 12.12.03.DOC
[MS Word] 4/18/03

3

Confidential - Not Subject to FOIA

3. **COMPANY'S COMPENSATION.**

   a. **Fees.** For the Services rendered pursuant to this Agreement, Hospital shall pay Company, as its sole compensation hereunder, a monthly fee of $37,040 payable within 15 business days of receipt of written documentation of the performance of the Services. Notwithstanding the foregoing, no compensation shall be payable to Company for any services for which Company has not submitted such documentation as reasonably required by Hospital, including, without limitation, the IRS Form W-9 "Request for Taxpayer Identification Number and Certification" and the documentation provided for under Subsection 1.d.

   b. **Entire Compensation.** Company shall have the sole responsibility to compensate Company Staff. Company reserves the right, in its sole discretion, to determine the compensation payable to Company Staff. Company hereby agrees to indemnify and hold Hospital harmless from any and all claims, costs and/or liability suffered or incurred by Hospital in connection with any claims for compensation by Company Staff for Services rendered hereunder. The indemnification obligations herein stated in this Subsection shall survive the termination and/or expiration of this Agreement.

4. **TERM AND TERMINATION.**

   a. **Term.** The initial term of this Agreement ("Initial Term") shall be two years commencing on the Effective Date. At the end of the Initial Term and any Term Extension (as defined herein), the term of this Agreement may be extended for an additional period of one year (a "Term Extension"), but only upon mutual written agreement of the parties. As used herein, "Term" shall mean the period of time beginning on the Effective Date and ending on the last day of either the Initial Term or the last Term Extension, as applicable.

   b. **Termination.**

      (1) **Termination Without Cause.** At any time after expiration of the first year of the Term, either party may, in its sole discretion, terminate this Agreement without cause by giving the other party at least 90 days' prior written notice. If such notice is given by Hospital, Hospital may, in its sole discretion, at any time prior to the effective date of such termination, relieve Company of Company's duties hereunder as long as Hospital continues to perform its obligations under this Agreement until the effective date of such termination.

      (2) **Termination for Good Cause.** At any time during the Term of this Agreement, either party may terminate this Agreement for "Good Cause" (as defined herein) by giving the other party at least 90 days' prior written notice. "Good Cause" means that the arrangement reflected by this Agreement has become unsatisfactory to the terminating party as determined in its sole discretion.

      (3) **Termination for Breach.** Either party may terminate this Agreement upon breach by the other party of any material provision of this Agreement, provided

Confidential - Not Subject to FOIA

such breach continues for 15 days after receipt by the breaching party of written notice of such breach from the non-breaching party.

(4)    **Immediate Termination by Hospital.** Hospital may terminate this Agreement immediately by written notice to Company upon the occurrence of any of the following:

(a)    the failure of Company or Company Staff to make a disclosure in accordance with Section 9 hereof;

(b)    conduct by Company or any Company Staff which, in the sole discretion of Hospital, could affect the quality of professional care provided to Facility patients, the performance of duties required hereunder, or which could be prejudicial or adverse to the best interest and welfare of Facility or its patients;

(c)    breach by Company or any Company Staff of any of the confidentiality provisions hereof;

(d)    failure by Company to maintain the insurance required under this Agreement;

(e)    closure of Facility, cessation of the patient care operations or sale of Facility or of all, or substantially all, of Facility's assets; or

(f)    Company or any of Company Staff's conviction of a criminal offense related to health care or Company or any Company Staff's listing by a federal agency as being debarred, excluded, or otherwise ineligible for federal program participation.

Company may cure such breach caused by any Company Staff under this Subsection 4.b.(4) by immediately terminating all employment and other Company-based professional and business relationships with such Company Staff and preventing said Company Staff from providing any Services hereunder.

(5)    **Effect of Termination.** As of the effective date of termination of this Agreement, neither party shall have any further rights nor obligations hereunder except: (a) as otherwise provided herein; (b) for rights and obligations accruing prior to such effective date of termination; and (c) arising as a result of any breach of this Agreement.

5.    **COMPANY'S STATUS.** Company and each Company Staff shall act at all times under this Agreement as independent contractors. The parties agree that Hospital shall not have and shall not exercise any control or direction over the manner or method by which each of Company Staff provides the Services. However, Company shall require all of Company Staff to perform at all times in accordance with currently approved methods and standards of practice for

Confidential - Not Subject to FOIA

Services in the community. The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

6. **INSURANCE.**

a. Company shall secure and maintain at all times during the Term, at Company's sole expense, commercial general liability insurance, covering Company, all Company Staff and all of Company's employees, with a carrier licensed to do business in the State and having at least an "A" BEST rating, at the following limits:

Commercial General Liability covering bodily injury and property damage to third parties and including Products/Completed Operations, Blanket Contractual Liability, and Personal/Advertising Injury:

> $1,000,000 per occurrence; $3,000,000 general aggregate
> and
> $1,000,000 per occurrence Personal/Advertising Injury
> $3,000,000 Products/Completed Operations aggregate

Such insurance shall name Hospital as an additional insured and shall not be cancelable except upon 30 days' prior written notice to Hospital. Such coverage shall be primary and non-contributory. Company shall annually provide Hospital a certificate of insurance evidencing such coverage and coverage extensions.

b. Company shall also secure and maintain at all times during the Term, at Company's sole expense, workers' compensation and employers' liability insurance covering Company's employees and all Company Staff, with a carrier licensed to do business in the State and having at least an "A" BEST rating, at the following limits:

| Workers' Compensation: | Statutory limits |
| Employers' Liability: | $1,000,000 each accident; |
| | $1,000,000 disease policy limit; |
| | $1,000,000 disease each employee |

Such coverage shall be placed as an actual Workers' Compensation policy, not as a health benefits policy, and shall be endorsed to include (1) a waiver of subrogation in favor of Hospital, and (2) a 30-day notice of cancellation. Such coverage shall be primary and non-contributory. Company shall annually provide a certificate of insurance to Hospital evidencing such coverage and coverage extensions.

c. Company shall require all Company Staff to secure and maintain at all times during the Term, at each Company Staff's sole expense, personal auto liability covering Company Staff, and any vehicle which Company Staff will bring onto Hospital property, with a carrier licensed to do business in the State and having at least an "A" BEST rating. Such

Confidential - Not Subject to FOIA

TENET-OIG-00000123

TENET-OIG-00000123

coverage shall be primary and non-contributory and procured at the minimum statutory limits promulgated by the State, but in any event no less than:

$25,000 bodily injury per person
$50,000 bodily injury per accident
$25,000 property damage

7.    ACCESS TO BOOKS AND RECORDS.

a.    If the value or cost of Services rendered to Hospital pursuant to this Agreement is $10,000 or more over a 12-month period, in accordance with section 1861(v)(1)(I) of the Social Security Act, Company agrees as follows:

(1)    Until the expiration of four years after the furnishing of such Services, Company shall, upon written request, make available to the Secretary of the United States Department of Health and Human Services (the "Secretary"), the Comptroller General of the United States, or their respective duly-authorized representatives, such books, documents, and records as may be necessary to certify the nature and extent of the cost of such Services; and

(2)    If any such Services are performed by way of subcontract with a related organization and the value or cost of such subcontracted services is $10,000 or more over a 12-month period, such subcontract shall contain, and Company shall enforce, a clause to the same effect as Subsection 7.a.(1) above.

b.    The availability of Company's books, documents, and records shall be subject at all times to all applicable legal requirements, including, without limitation, such criteria and procedures for seeking and obtaining access that may be promulgated by the Secretary by regulation.  The provisions of Subsections 7.a. and 7.b. shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

8.    CONFIDENTIALITY.

a.    Hospital Information.  Company recognizes and acknowledges that, by virtue of entering into this Agreement and providing services to Hospital hereunder, Company and Company Staff may have access to certain information of Hospital that is confidential and constitutes valuable, special and unique property of Hospital.  Company agrees that neither Company nor any Company Staff will at any time, (either during or subsequent to the term of this Agreement), disclose to others, use, copy or permit to be copied, without Hospital's express prior written consent, except in connection with the performing of Company's and Company Staff's duties hereunder, any confidential or proprietary information of Hospital, including, without limitation, information which concerns Facility's patients, costs, or treatment methods developed by Hospital for the Facility, and which is not otherwise available to the public.

Confidential - Not Subject to FOIA

b.    **Terms of this Agreement.**  Except for disclosure to Company's or any Company Staff's legal counsel, accountant or financial advisors (none of whom shall be associated or affiliated in any way with Hospital or any of its affiliates), neither Company nor any Company Staff shall disclose the terms of this Agreement to any person, unless disclosure thereof is required by law or otherwise authorized by this Agreement or consented to by Hospital.  Unauthorized disclosure of the terms of this Agreement shall be a material breach of this Agreement and shall provide Hospital with the option of pursuing remedies for breach or immediate termination of this Agreement in accordance with Subsection 4.b. hereof.

c.    **Patient Information.**  Neither Company nor any Company Staff shall disclose to any third party, except where permitted or required by law or where such disclosure is expressly approved by Hospital in writing, any patient or medical record information regarding Facility patients, and Company and Company Staff shall comply with all federal and state laws and regulations, and all bylaws, rules, regulations, and policies of Hospital and Facility regarding the confidentiality of such information.  Company acknowledges that in receiving or otherwise dealing with any records or information from Hospital about Facility's patients receiving treatment for alcohol or drug abuse, Company and Company Staff are bound by the provisions of the federal regulations governing Confidentiality of Alcohol and Drug Abuse Patient Records, 42 C.F.R. Part 2, as amended from time to time.

d.    **HIPAA Compliance.**  Company agrees to comply with the applicable provisions of the Administrative Simplification section of the Health Insurance Portability and Accountability Act of 1996, as codified at 42 U.S.C. § 1320 through d-8 ("HIPAA"), and the requirements of any regulations promulgated thereunder, including, without limitation, the federal privacy regulations as contained in 45 C.F.R. Part 164, and the federal security standards as contained in 45 C.F.R. Part 142 (collectively, the "Regulations").  Company shall not use or further disclose any protected health information, as defined in 45 C.F.R. 164.504, or individually identifiable health information, as defined in 42 U.S.C. § 1320d (collectively, the "Protected Health Information"), other than as permitted by this Agreement and the requirements of HIPAA or the Regulations.  Company will implement appropriate safeguards to prevent the use or disclosure of Protected Health Information other than as contemplated by this Agreement.  Company will promptly report to Hospital and Facility any use or disclosures, of which Company becomes aware, of Protected Health Information in violation of HIPAA or the Regulations.  In the event that Company contracts with any agents to whom Company provides Protected Health Information, Company shall include provisions in such agreements pursuant to which Company and such agents agree to the same restrictions and conditions that apply to Company with respect to Protected Health Information.  Company will make its internal practices, books and records relating to the use and disclosure of Protected Health Information available to the Secretary to the extent required for determining compliance with HIPAA and the Regulations.  No attorney-client, accountant-client or other legal or equitable privilege shall be deemed to have been waived by Company, Hospital or Facility by virtue of this Subsection.

e.    **Survival.**  The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

Confidential - Not Subject to FOIA

9.    **REQUIRED DISCLOSURES.** Company shall notify Hospital in writing within three days after any of the following events occurs:

a.    Any Company Staff's professional license or certification in the State or any other jurisdiction lapses or is denied, suspended, revoked, terminated, relinquished, or made subject to terms of probation or other restriction;

b.    An event occurs that substantially interrupts all or a portion of Company's or any Company Staff's ability to perform Company's or any Company Staff's obligations hereunder; or

c.    Company's or any Company Staff's conviction of a criminal offense related to health care or Company's or any Company Staff's listing by a federal agency as being debarred, excluded, or otherwise ineligible for federal program participation.

10.    **ARBITRATION.** Any dispute or controversy arising under, out of or in connection with, or in relation to this Agreement, or any amendment hereof, or the breach hereof shall be determined and settled by arbitration in Fulton County, Georgia in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration and applying the laws of the State. Any award rendered by the arbitrator shall be final and binding upon each of the parties, and judgment thereon may be entered in any court having jurisdiction thereof. The costs shall be borne equally by both parties. During the pendency of any such arbitration and until final judgment thereon has been entered, this Agreement shall remain in full force and effect unless otherwise terminated as provided hereunder. The provisions set forth herein shall survive expiration or other termination of this Agreement regardless of the cause of such termination.

11.    **INDEMNIFICATION.** Both parties mutually agree to indemnify and hold each other harmless from and against all liability, losses, damages, claims, causes of action, cost or expenses (including reasonable attorneys' fees), which directly or indirectly arise from the performance of the Services hereunder by the indemnifying party, its agents, servants, representatives and/or employees.

12.    **ENTIRE AGREEMENT; MODIFICATION.** This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, and all other communications between the parties relating to such subject matter. This Agreement may not be amended or modified except by mutual written agreement.

13.    **GOVERNING LAW.** This Agreement shall be construed in accordance with the laws of the State. The provisions set forth herein shall survive expiration or other termination of this Agreement regardless of the cause of such termination.

Confidential - Not Subject to FOIA

14.  **COUNTERPARTS.** This Agreement may be executed in one or more counterparts, all of which together shall constitute only one Agreement.

15.  **NOTICES.** All notices hereunder shall be in writing, delivered personally, by certified or registered mail, return receipt requested, or by overnight courier, and shall be deemed to have been duly given when delivered personally or when deposited in the United States mail, postage prepaid, or deposited with the overnight courier, addressed as follows:

| | |
|---|---|
| If to Hospital: | North Fulton Regional Hospital<br>3000 Hospital Boulevard<br>Roswell, GA 30076<br>Attn: Chief Executive Officer |
| with a copy to: | Tenet HealthSystem<br>3350 Riverwood Parkway, Suite 1800<br>Atlanta, GA 30339<br>Attn: Regional Director - Operations |
| and: | Tenet HealthSystem<br>Centre Square, West Tower<br>1500 Market Street, 34th Floor<br>Philadelphia, PA 19102<br>Attn: Regional Counsel - Law Department |
| If to Company: | Hispanic Medical Management, Inc.<br>5139 Jimmy Carter Boulevard, Suite 205<br>Norcross, GA 30093<br>Attn: Tracey Cota, Chief Operating Officer |
| with a copy to: | William C. Tinsley II, Esq.<br>Tinsley Bacon Tinsley, LLC<br>100 North Point Center East, Suite 440<br>Alpharetta, GA 30022 |

or to such other persons or places as either party may from time to time designate by notice pursuant to this Section.

16.  **WAIVER.** A waiver by either party of a breach or failure to perform hereunder shall not constitute a waiver of any subsequent breach or failure.

17.  **CAPTIONS.** The captions contained herein are used solely for convenience and shall not be deemed to define or limit the provisions of this Agreement.

Confidential - Not Subject to FOIA

18.    **ASSIGNMENT; BINDING EFFECT.** Company shall not assign or transfer, in whole or in part, this Agreement or any of Company's rights, duties or obligations under this Agreement without the prior written consent of Hospital, and any assignment or transfer by Company without such consent shall be null and void. For purposes of this Agreement, the transfer of ownership of all or a portion of the shares, partnership interests, or other ownership interests of Company, in a single transaction or a series of transactions, which results in the replacement of 50% or more of the shareholders, partners, members or owners, as the case may be, of Company as they existed on the commencement date of this Agreement shall be deemed an assignment hereunder. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, representatives, successors and permitted assigns. This Agreement is assignable by Hospital without consent or notice.

19.    **FINANCIAL OBLIGATION.** Neither Company nor any Company Staff shall incur any financial obligation on behalf of Hospital or Facility without the prior written approval of Hospital.

NORTH FULTON MEDICAL CENTER, INC.
D/B/A NORTH FULTON REGIONAL HOSPITAL

By: _____
Name:   John Holland
Title:    President
Date:    12/30/03

HISPANIC MEDICAL MANAGEMENT, INC.
D/B/A CLINICA DE LA MAMA

By: _____
Name:   Tracey Cota
Title:    Chief Operating Officer
Date:    12-23-03

Confidential - Not Subject to FOIA

**EXHIBIT A**

**DESCRIPTION OF DUTIES AND RESPONSIBILITIES**

Staffing and management services provided by Company shall include:

a.     Company, as manager, shall provide sufficient bilingual Company staff twenty- four hours per day and seven days per week as may be reasonably necessary to enable Hospital physicians and staff medical and clerical personnel to understand Hispanic speaking patients so that they can perform medical services on the Hispanic patients at the Hospital facility.

Fees per month for these services shall be based upon the following:

960 hrs/month (6 employees) @ $16.50/hr          $15,840

b.     Company shall: (1) train, manage and supervise all Company Staff; (2) hire and fire all Company staff; (3) determine the salaries, fringe benefits, bonuses, health and disability insurance, workers' compensation insurance, and any other benefits for all Staff; and (4) be responsible for any appropriate disciplinary action required to be taken against Company staff. Notwithstanding the foregoing, Company shall consult with Hospital from time to time as appropriate in connection with the hiring, performance appraisal, discipline and termination of the Company Staff. The two shareholder officers of Company shall closely supervise Company Staff to ensure proper management of the Department.

Fees per month for these services shall be based upon the following:

25 hrs/month @ $150/hr:          $ 3,750

2.     Obtain all necessary patient information to determine the eligibility of Hispanic children patients for Peachcare or Permanent Medicaid and adult Hispanic patients for emergency medical assistance ("EMA"), Permanent Medicaid or Medically Needy Medicaid from the State or from any other applicable third party payor to cover Hospital Services.

Fees per month for these services shall be based upon the following:

240 hrs/month @ $39.17/hr          $ 9,400

3.     The two shareholder officers of Company shall develop the following programs based on their years of experience in the medical field and their knowledge and understanding of the cultural issues involved in the Hispanic community:

a.     Consult, design and assist in implementing in conjunction with Hospital an awareness campaign of the medical and hospital facilities available in the metro Atlanta Hispanic community.

b.     Plan, design and implement community healthcare outreach programs in conjunction with Hospital in the Hispanic community.

Fees per month for these services shall be based upon the following:

12 hrs/month @ $150/hr:          $ 1,800

F:\USERS\PAT\WORDDOCU\CONTRACTS\CLINICA\CLINICA AGREEMENT 11.03 - REVISED 12.12.03.DOC
[MS Word] 4/18/03

Confidential - Not Subject to FOIA

4. Based on the two shareholder officers' awareness of the medical needs and cultural issues involved in the Hispanic community, classes will be developed, literature will be reviewed for instructional use, and experienced bilingual instructors will be supervised to provide the following:

   a. Independently, and in conjunction with Hospital, design and teach prenatal, newborn care and breast feeding classes for Spanish speaking patients, as well as provide support literature in Spanish to patients and family attending these classes.

   b. Provide educational literature in Spanish for prenatal, postnatal, postpartum.

      Fees per month for these services shall be based upon the following:

      80 hrs/month @$62.50/hr                    $ 5,000

5. Provide pre-registration, registration, admissions and determination of Medicaid eligibility, as well as provide assistance to eligible patients for their application for Medicaid. Ensure that all Hispanic patients needing assistance in the Hospital are assigned a bilingual representative for the duration of their admission in the Facility. As part of this process, assist patients needing help with the Medicaid application process, either before or after discharge. Provide Hospital with demographic and billing information prior to admission for all patients Company knows will be admitted to the Facility.

      Fees per month for these services shall be based upon the following:

      80 hrs/month @ $15.63/hr                   $ 1,250

Confidential - Not Subject to FOIA

Confidential - Not Subject to FOIA

TENET-OIG-00000131

TENET-OIG-00000131

**EXHIBIT B**

## HISPANIC MEDICAL MANAGEMENT ("Company") ACTIVITY LOG

Hispanic Patient Translation and Administrative Services
(TITLE OF SERVICE)

Number of Calendar Months Remaining
in the Agreement Term: _____

[PLEASE PRINT OR TYPE ALL INFORMATION]

| DESCRIPTION OF SERVICES PERFORMED BY COMPANY STAFF AND/OR OF PROGRAMS DEVELOPED BY COMPANY'S OFFICERS AND/OR MEETINGS WITH INDIVIDUALS THAT PERTAINED TO DUTIES AS DESCRIBED IN THE AGREEMENT (INCLUDE PLACE OF PERFORMANCE) | Date Performed | Time Expended | Purpose or Results of Performance | Miscellaneous Comments |
|---|---|---|---|---|
| 1. _____ _____ _____ _____ _____ | ____ | | _____ _____ _____ _____ | _____ _____ _____ _____ |
| 2. _____ _____ _____ _____ _____ | ____ | | _____ _____ _____ _____ | _____ _____ _____ _____ |
| 3. _____ _____ _____ _____ _____ | ____ | | _____ _____ _____ _____ | _____ _____ _____ _____ |

PAGE _____ OF _____ OF ACTIVITY LOG - MONTH OF _____, 20 __
(use additional pages as necessary)

| Description of Services Performed by Company Staff and/or of Programs Developed by Company's Officers and/or Meetings with Individuals that Pertained to Duties as Described in the Agreement (Include Place of Performance) | Date Performed | Time Expended | Purpose or Results of Performance | Miscellaneous Comments |
|---|---|---|---|---|
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |

PAGE ____ OF ____ OF ACTIVITY LOG - MONTH OF ____, 20__.
(use additional pages as necessary)

Confidential - Not Subject to FOIA

| DESCRIPTION OF SERVICES PERFORMED BY COMPANY STAFF AND/OR OF PROGRAMS DEVELOPED BY COMPANY'S OFFICERS AND/OR MEETINGS WITH INDIVIDUALS THAT PERTAINED TO DUTIES AS DESCRIBED IN THE AGREEMENT (INCLUDE PLACE OF PERFORMANCE) | Date Performed | Time Expended | Purpose or Results of Performance | Miscellaneous Comments |
|---|---|---|---|---|
| 9. | | | | |
| 10. | | | | |
| | | TOTAL | | |

By signing this document, Company hereby affirms and attests that the services and the number of hours recorded for such services set forth herein were performed by the Company.

HISPANIC MEDICAL MANAGEMENT:

By signing this document the CEO and the CFO affirm and attest that they have confirmed that the services rendered and the number of hours recorded for such services by Company satisfy the contractual obligations of the Company, and that the number of months remaining in the Agreement Term as stated on page one is accurate.

REVIEWED BY CEO:

_____     _____
Signature     Date

APPROVED BY CFO:

_____     _____
Signature     Date

_____     _____
Signature     Date

PAGE _____ OF _____ OF ACTIVITY LOG - MONTH OF _____, 20___
(use additional pages as necessary)

Confidential - Not Subject to FOIA

# SERVICES AGREEMENT

**THIS SERVICES AGREEMENT** ("Agreement") is made and entered into as of the later of November 1, 2006, or the execution of the Agreement by both parties (the "Effective Date") between **North Fulton Medical Center, Inc.**, a Georgia corporation, doing business as North Fulton Regional Hospital ("Hospital") and **Hispanic Medical Management, Inc.**, a Georgia corporation, doing business as Clinica de la Mama ("Company").

## RECITALS:

A. Hospital is in need of translation and administrative services for its Hispanic patients (the "Services"), and is in need of experienced individuals to provide the service.

B. Company employs or otherwise contracts with individuals duly qualified and experienced in furnishing the Services (collectively "Company Staff").

C. Company and Hospital agree that it is in the best interest of Hospital's ability to provide quality patient care in a cost-effective and efficient manner for Hospital to contract with an entity to provide the Services.

**NOW, THEREFORE**, for and in consideration of the recitals above and the mutual covenants and conditions contained herein, Hospital and Company agree as follows:

1  **COMPANY AND COMPANY STAFF OBLIGATIONS.**

a. **Services.** While this Agreement is in effect, Company shall provide Services at Hospital as set forth in Exhibit A attached hereto and made a part hereof.

b. **Performance.** Company and its Company Staff agree that all Services provided pursuant to this Agreement shall be performed in compliance standards set forth by law or ordinance or established by the rules and regulations of any federal, state or local agency, department, commission, association or other pertinent governing, accrediting, or advisory body, including the Joint Commission on Accreditation of Healthcare Organizations ("Joint Commission"), having authority to set standards for health care facilities. At all times while this Agreement is in effect, the CEO shall have the right to request removal of any such Physician if, in the CEO's best judgment, such removal is in the best interests of Hospital. Company hereby agrees to immediately remove any such Physician upon receipt of the CEO's request.

c. **Company Staff Required Documentation.** Company shall provide competent Company Staff to meet Hospital's needs with regard to Hispanic speaking patients. Documentation by Company shall include, but not be limited to, obtaining the following pertinent information concerning all past employment, licensure, certifications, education, and professional skills of Company Staff:

1

Confidential - Not Subject to FOIA

TENET-OIG-00000147

TENET-OIG-00000147

(1) Proof of current original licensure and appropriate certification, which licensure and certifications, if any, must be presented to Hospital by Company Staff upon reporting for work, per Hospital guidelines.

(2) Proof of compliance with applicable immigration laws and maintenance of current I-9 documentation.

(3) Company shall maintain current written employee releases from all Company Staff provided under this Agreement to permit Hospital access to their medical file. Information on physical limitations or impairments and other medical information shall be collected and maintained in accordance with all applicable anti-discrimination laws including, without limitation, the State's Labor Code, the Rehabilitation Act of 1974 and the Americans with Disabilities Act of 1991.

Minimum of two professional references.

(6) Company Staff must be able to speak, write, and read the English and Spanish languages sufficiently to communicate with patients and staff and to complete required documentation.

Job Description signed by Company Staff.

(8) Proof of each Company Staff's competency to provide the Services shall be provided to Hospital on a quarterly basis.

Company Staff shall not begin work at Hospital until items required in this Subsection 1.d. (1) through (7) are provided to and approved by the Hospital's Human Resources Director or designee.

d. **Company Staff Required Screenings, Background Investigation, Orientation, Education, and Privacy Videotape.**

(1) Hospital's Employee Health Nurse shall provide to each Company Staff, at Hospital's expense, an occupational health screening/service to include PPD or chest x-ray, drug screen, fit test, color blindness evaluation, hepatitis vaccination offering, rubella titer, and other screenings/services as may be required from time to time by state and/or federal agencies and in accordance with Hospital policy and requirements. Such health screening/service shall not include services or screenings relating to any illness or injury arising from workers' compensation claims (i.e., injury, illness, tracking or medical services) or other personal illness or injury requiring medical attention or related health services. Results of all health screenings/services shall be provided to Hospital's Human Resources Director or designee prior to any Company Staff providing Services at Hospital.

(2) Hospital, at Hospital's expense, shall conduct a complete background investigation on each Company Staff. A complete background investigation will include, at a minimum, all of the following elements: (1) 7-year criminal background check in

2

F:\users\PAT\WORD\DOCU\Contracts\Clinics\Clinics agreement 10.06.doc
4/11/2006

Confidential - Not Subject to FOIA

TENET-OIG-00000148

current and previous counties of residence and employment, (2) confirmation that Company Staff is not listed as a sexual offender and, if requested by Hospital, in any child abuse registry, (3) evidence that Company Staff is eligible to participate in all federal and state health programs and verification that Company Staff is not on the OIG or GSA exclusion list, and (4) any other element required by Hospital to meet state law requirements. Results of the background investigation shall be provided to Hospital's Human Resources Director or designee prior to any Company Staff providing Services at Hospital.

> (3) All Company Staff shall attend Hospital's General Orientation prior to providing Services at Hospital.

> (4) All Company Staff shall complete Hospital's annual education requirements and annual ethics training.

> (5) Prior to providing any Services at Hospital, all Company Staff shall view a videotape (the "Video") regarding Hospital's patient information privacy policies and practices in its entirety and achieve a passing score (as defined by Hospital from time to time) on the questions at the end of the Video. Hospital shall maintain the training record for a minimum of six (6) years, including, without limitation, the date and time each Company Staff viewed the Video and the score each Company Staff received on the questions at the end of the Video (the "Training Records").

> (6) Hospital's Women's Health Director will provide Company with an evaluation of each Company Staff's performance on an annual basis.

> e. **Patient Satisfaction Surveys.** Company shall conduct patient satisfaction surveys on a monthly basis. Results of such surveys will be made available to Hospital for quality and performance improvement purposes.

> f. **Representations and Warranties.** Company represents and warrants to Hospital as follows: (i) Neither Company nor any Company Staff is bound by any agreement or arrangement which would preclude Company or any Company Staff from entering into, or from fully performing the Services required under this Agreement; (ii) No Company Staff's license or certification in the State or in any other jurisdiction has never been denied, suspended, revoked, terminated, relinquished under threat of disciplinary action, or restricted in any way; (iii) Neither Company nor any of Company Staff has ever been charged with or convicted of a criminal offense related to health care or listed by a federal agency as debarred, excluded or otherwise ineligible for federal program participation; (iv) All Company Staff shall provide interpretation services only pursuant to this Agreement and no Company Staff shall offer advice or make recommendations at any time regarding medical care to any patient or patient's family.

2. **COMPANY'S COMPENSATION.** For the Services rendered pursuant to this Agreement, Hospital shall pay Company, as its sole compensation hereunder, a monthly fee of Thirty-seven Thousand Six Hundred Ninety-two and 00/100 Dollars ($37,692.00) payable within 15 business day of the performance of the Services. Notwithstanding the foregoing, no compensation shall be payable to Company for any services for which Company has not

3

Confidential - Not Subject to FOIA

TENET-OIG-00000149

TENET-OIG-00000149

submitted such documentation as reasonably required by Hospital, including, without limitation, the IRS Form W-9 "Request for Taxpayer Identification Number and Certification." Company shall have the sole responsibility to compensate Company Staff. Company reserves the right, in its sole discretion, to determine the compensation payable to Company Staff. Company hereby agrees to indemnify and hold Hospital harmless from any and all claims, costs and/or liability suffered or incurred by Hospital in connection with any claims for compensation by Company Staff for Services rendered hereunder. The indemnification obligations herein stated in this Subsection shall survive the termination and/or expiration of this Agreement.

3. **TERM.** The initial term of this Agreement ("Initial Term") shall be two (2) years commencing on the Effective Date. At the end of the Initial Term and any Term Extension (as defined herein), the term of this Agreement may be extended for an additional period of one year (a "Term Extension"), but only upon mutual written agreement of the parties. As used herein, "Term" shall mean the period of time beginning on the Effective Date and ending on the last day of either the Initial Term or the last Term Extension, as applicable.

4. **TERMINATION.**

   a. **Termination Without Cause.** Either party may, in its sole discretion, terminate this Agreement without cause by giving the other party at least ninety (90) days' prior written notice.

   b. **Termination for Breach.** Either party may terminate this Agreement upon breach by the other party of any material provision of this Agreement, provided such breach continues for fifteen (15) days after receipt by the breaching party of written notice of such breach from the non-breaching party.

   c. **Immediate Termination by Hospital.** Hospital may terminate this Agreement immediately by written notice to Company upon the occurrence of any of the following: (i) breach by Company or any Company Staff of any of the confidentiality provisions hereof; (ii) failure by Company to maintain the insurance required under this Agreement; (iii) closure of Hospital, cessation of the patient care operations or sale of Hospital or of all, or substantially all, of Hospital's assets; or (iv) Company or any of Company Staff's conviction of a criminal offense related to health care or Company or any Company Staff's listing by a federal agency as being debarred, excluded, or otherwise ineligible for federal program participation.

   d. **Termination for Changes in Law.** In the event that any governmental or nongovernmental agency, or any court or administrative tribunal passes, issues or promulgates any new, or change to any existing, law, rule, regulation, standard, interpretation, order, decision or judgment (individually or collectively, "Legal Event"), which a party (the "Noticing Party") reasonably believes (i) materially and adversely affects either party's licensure, accreditation, certification, or ability to refer, to accept any referral, to present a bill or claim, or to receive payment or reimbursement from any governmental or non-governmental payor, or (ii) indicates a Legal Event with which the Noticing Party desires further compliance, then, in either event, the Noticing Party may give the other party thirty (30) days prior written notice of its intent to amend or terminate this Agreement. Notwithstanding the foregoing, the Noticing Party may

4

F:\users\PAT\WORD.DOC\CU\Contracts\Clinica\Clinica agreement 10.06.doc
4/11/2006

Confidential - Not Subject to FOIA

propose an amendment to the Agreement to take into account the Legal Event, and, if accepted by the other party prior to the end of the thirty (30) day notice period, the Agreement shall be amended as of the date of such acceptance and if not amended shall automatically terminate.

   e.   **Effect of Termination.** As of the effective date of termination of this Agreement, neither party shall have any further rights nor obligations hereunder except: (a) as otherwise provided herein; (b) for rights and obligations accruing prior to such effective date of termination; and (c) arising as a result of any breach of this Agreement.

5.   **COMPANY'S STATUS.** In performing the Services, Company and Company Staff are acting as independent contractors, and neither Company nor Company Staff shall be considered an employee of Hospital. Hospital shall not exercise any control or direction over the manner or method by which Company provides the Services. However, Company shall require all Company Staff to perform at all times in accordance with currently approved methods and standards of practice for Services in the medical community. The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

6.   **INSURANCE.**

Company shall secure and maintain at all times during the Term, at Company's sole expense, general liability insurance covering Company, and Company's Staff, with a carrier licensed to do business in the State and having at least an "A" BEST rating, at the following limits:

Commercial General Liability covering bodily injury and property damage to third parties and including Products/Completed Operations, Blanket Contractual Liability, and Personal/Advertising Injury:

> $1,000,000 per occurrence; $3,000,000 general aggregate
> and
> $1,000,000 per occurrence Personal/Advertising Injury
> $3,000,000 Products/Completed Operations aggregate

Such insurance shall name Hospital as an additional insured and shall not be cancelable except upon 30 days' prior written notice to Hospital. Such coverage shall be primary and non-contributory. Company shall annually provide Hospital a certificate of insurance evidencing such coverage and coverage extensions.

7.   **ACCESS TO BOOKS AND RECORDS.** If the value or cost of Services rendered to Hospital pursuant to this Agreement is $10,000 or more over a 12-month period, in accordance with section 1861(v)(1)(I) of the Social Security Act, Company agrees that at least for four (4) years after the furnishing of such Services, Company shall, upon written request, make available to the Secretary of the United States Department of Health and Human Services (the "Secretary"), the Comptroller General of the United States, or their respective duly-authorized representatives, such books, documents, and records as may be necessary to certify the nature

5

Confidential - Not Subject to FOIA

TENET-OIG-00000151

TENET-OIG-00000151

and extent of the cost of such Services. The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

8. **CONFIDENTIALITY.** Company and Company Staff agree to maintain and hold as confidential and to not disclose the terms of this Agreement or any confidential or proprietary information that Company or Company Staff may be provided during the term of this Agreement to any other person (with the exception of Company's or any Company Staff's legal counsel, accountant or financial advisors), unless disclosure thereof is required by law or otherwise authorized by this Agreement or consented to in writing by Hospital. With respect to any patient or medical record information regarding Hospital patients, Company and Company Staff shall comply with all federal and state laws and regulations, and all bylaws, rules, regulations, and policies of Hospital and its medical staff, regarding the confidentiality of such information, including, without limitation, all applicable provisions and regulations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

9. **ARBITRATION.** Any dispute or controversy arising under, out of or in connection with, or in relation to this Agreement, or any amendment hereof, or the breach hereof shall be determined and settled in the county where the Hospital is physically located, in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration and applying the laws of the State. Any award rendered by the arbitrator shall be final and binding upon each of the parties, and judgment thereon may be entered in any court having jurisdiction thereof. The costs of arbitration shall be borne equally by both parties but the losing party shall pay the prevailing party's reasonable attorneys fees. The provisions set forth herein shall survive expiration or other termination of this Agreement.

10. **INDEMNIFICATION.** Both parties mutually agree to indemnify and hold each other harmless from and against all liability, losses, damages, claims, causes of action, cost or expenses (including reasonable attorneys' fees), which directly or indirectly arise from the performance of the Services hereunder by the indemnifying party, its agents, servants, representatives and/or employees.

11. **ENTIRE AGREEMENT; MODIFICATION; GOVERNING LAW, COUNTERPARTS; NOTICES, WAIVER; BINDING EFFECT.** This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, and all other communications between the parties relating to such subject matter. This Agreement may not be amended or modified except by mutual written agreement. This Agreement shall be construed in accordance with the laws of the State and shall survive the expiration or other termination of this Agreement. This Agreement may be executed in one or more counterparts, all of which together shall constitute only one Agreement. All notices hereunder shall be in writing, delivered personally, by certified or registered mail, return receipt requested, or by overnight courier, and shall be deemed to have been duly given when delivered personally or when deposited in the United States mail, postage prepaid, or deposited with the overnight courier, addressed at the place identified on the signature page below. A waiver by either party of a breach or failure to perform hereunder shall not constitute a waiver of any

6

Confidential - Not Subject to FOIA

TENET-OIG-00000152

TENET-OIG-00000152

subsequent breach or failure. Company shall not assign or transfer, in whole or in part, this Agreement or any of Company's rights, duties or obligations under this Agreement without the prior written consent of Hospital, and any assignment or transfer by Company without such consent shall be null and void. This Agreement is assignable by Hospital without consent or notice.

12. **NON-DISCRIMINATION.** Company agrees to treat in a nondiscriminatory manner any and all patients receiving medical benefits or assistance under any federal health care program.

13. **COMPLIANCE OBLIGATIONS.** Company has received, read, understood, and shall abide by Tenet's Code of Conduct. The parties to this Agreement shall comply with Tenet's Compliance Program and Tenet's policies and procedures related to the Anti-Kickback Statute and the Stark Law. A summary of Tenet's Compliance Program and a link to Tenet's policies and procedures shall be provided to Company upon request. Further, the parties to this Agreement certify that they shall not violate the Anti-Kickback Statute and/or the Stark Law.


**NORTH FULTON MEDICAL CENTER, INC.**
**D/B/A NORTH FULTON REGIONAL HOSPITAL**

By: _____
Name: David Anderson
Title: Interim CEO
Date: 10/30/06
Address: 3000 Hospital Boulevard
Roswell, GA 30076


**HISPANIC MEDICAL MANAGEMENT, INC.**
**D/B/A CLINICA DE LA MAMA**

By: _____
Name: Tracey Cole
Title: C.O.O.
Date: 10-30-06
Address: 5127 Jimmy Carter Boulevard
Norcross, GA 30093


7

Confidential - Not Subject to FOIA

## EXHIBIT A

## DESCRIPTION OF DUTIES AND RESPONSIBILITIES

1    Staffing and management services provided by Company shall include:

**Translation Services:** Company, as manager, shall provide bilingual Company Staff twenty-four (24) hours per day, seven (7) days per week as specified below to enable Hospital physicians and staff medical and clerical personnel to understand Hispanic speaking patients so that they can perform medical services on the Hispanic patients at the Hospital. Translation services are to be provided as needed in all patient care areas; including but not limited to, Women's Health, Operative Services, and the Emergency Department, as well as in any non-patient care area as needed.

    Two interpreters Monday through Friday from 7 a.m. until 11 p.m.
    Two interpreters Monday through Friday from 11 p.m. until 7 a.m.
    One interpreter Saturday and Sunday, 24 hr/day

| | |
|---|---|
| 1,248 hours/month @ $16.50/hour | $20,592 per month |
| Oversight, management, benefits | $2,000 per month |

**DOCUMENTATION REQUIRED:** Company Staff shall clock in and out from work at Hospital's time clocks. Time Records will be maintained by Hospital's administration department. If during any month, Company Staff fail to clock a total of 1,220 hours, Hospital will deduct $16.50/hour from Company's compensation for each hour Company is short.

2.    **Eligibility Determination Services.** Obtain all necessary patient information to determine the eligibility of Hispanic children patients for Peachcare or Permanent Medicaid and adult Hispanic patients for emergency medical assistance ("EMA"), Permanent Medicaid or Medically Needy Medicaid from the State or from any other applicable third party payor to cover Hospital Services.

    280 hours/month @ $30/hour        $ 8,400 per month

**DOCUMENTATION REQUIRED.** Hospital's Women's Health Director will forward to Hospital's administration department the daily work sheets completed by the Company Staff that will show compliance with this duty. Hospital will monitor Company's fulfillment of this obligation via a quarterly reconciliation conducted through the Performance Improvement ("PI") process.

**Other Services shall include:**
a.    Company shall provide pre-natal work-up on each mother at thirty-two (32) weeks to Hospital's Women's Health Director.

Confidential - Not Subject to FOIA

b.  Company shall provide complete information from Company's records to Hospital's Admissions Department for pre-registration of each patient.

c.  Company will certify to Hospital's Health Information Management Department that all information required by the State for the baby's birth certificate is complete.

> 140 hours/month @ $30/hour          $ 4,200 per month

**DOCUMENTATION REQUIRED.** Company's compliance with a. through c. above will be tracked by Hospital's Women's Health Director, Hospital's Admissions Manager, and Hospital's Health Information Management Director, respectively. Hospital will monitor Company's fulfillment of this obligation via a quarterly reconciliation conducted through the Performance Improvement ("PI") process.

3.  **Education.** Based on the two shareholder officers' awareness of the medical needs and cultural issues involved in the Hispanic community, Company shall provide experienced bilingual instructors to design and teach prenatal, newborn care, and breast feeding classes for Hispanic patients and their family members, and also provide educational materials in Spanish for prenatal, postnatal, postpartum patients.

> 40 hours/month @ $62.50/hour          $ 2,500 per month

**DOCUMENTATION REQUIRED.** Company shall provide Hospital with a schedule of classes conducted each month, including a roster of attendees at each class. Company shall also provide Hospital with a copy of instructor's timesheet for each class. Hospital will monitor Company's fulfillment of this obligation via a quarterly reconciliation conducted through the Performance Improvement ("PI") process.

Confidential - Not Subject to FOIA

## SERVICES AGREEMENT

THIS SERVICES AGREEMENT ("Agreement") is made and entered into as of the later of December 1, 2009, or the execution of the Agreement by both parties (the "Effective Date") between **North Fulton Medical Center, Inc.**, a Georgia corporation, doing business as North Fulton Regional Hospital ("Hospital") and **Hispanic Medical Management, Inc.** doing business as Clinica de la Mama ("Company").

## RECITALS:

A.     Hospital is in need of translation and administrative services (the "Services"), and is in need of experienced individuals to provide the service.

B.     Company employs or otherwise contracts with individuals duly qualified and experienced in furnishing the Services (collectively "Company Staff").

C.     Company and Hospital agree that it is in the best interest of Hospital's ability to provide quality patient care in a cost-effective and efficient manner for Hospital to contract with an entity to provide the Services.

NOW, THEREFORE, for and in consideration of the recitals above and the mutual covenants and conditions contained herein, Hospital and Company agree as follows:

1.     **COMPANY'S OBLIGATIONS.**

  a.     **Services.** While this Agreement is in effect, Company shall provide Company Staff who are a minimum of Twenty-One (21) years old to provide Services at Hospital as set forth in Exhibit A attached hereto and made a part hereof.

  b.     **Performance.** Company and its Company Staff agree that all Services provided pursuant to this Agreement shall be performed in compliance standards set forth by law or ordinance or established by the rules and regulations of any federal, state or local agency, department, commission, association or other pertinent governing, accrediting, or advisory body, including The Joint Commission ("Joint Commission"), having authority to set standards for health care facilities. At all times while this Agreement is in effect, the CEO shall have the right to request removal of any such Company Staff if in the CEO's best judgment such removal is in the best interests of Hospital. Company hereby agrees to immediately remove any such Company Staff upon receipt of the CEO's request.

  c.     **Company Staff Required Documentation.** Company shall provide competent Company Staff to meet Hospital's needs with regard to Hispanic speaking patients. Documentation by Company shall include, but not be limited to, obtaining the following pertinent information concerning all past employment, licensure, certifications, education, and professional skills of Company Staff:

  (1)     Proof of a minimum of one year of medical interpretation experience in a healthcare setting.

1

H:\PAT\WORD\DOCU\Connzen\Clinica de la Mama\Clinica at NFRH agreement 12.09.doc

Confidential - Not Subject to FOIA

TENET-OIG-00006185
TENET-OIG-00006185