(2) Proof of compliance with applicable immigration laws and maintenance of current I-9 documentation.

(3) Company shall maintain current written employee releases from all Company Staff provided under this Agreement to permit Hospital access to their medical file. Information on physical limitations or impairments and other medical information shall be collected and maintained in accordance with all applicable anti-discrimination laws including, without limitation, the State's Labor Code, the Rehabilitation Act of 1974 and the Americans with Disabilities Act of 1991.

(4) One professional reference.

(5) Company Staff must be able to speak, write, and read the English and Spanish languages sufficiently to communicate with patients and staff and to complete required documentation.

(6) Job Description signed by Company Staff.

(7) Proof of each Company Staff's competency to provide the Services shall be provided to Hospital on an annual basis.

Company Staff shall not begin work at Hospital until items required in this Subsection 1.c. (1) through (7) are provided to and approved by the Hospital's Human Resources Director or designee.

d. **Company Staff Required Screenings, Background Investigation, Orientation, Annual Education, Ethics and Compliance Training, Privacy Videotape and Dress Code.** Company shall require all Company Staff to comply with the following Hospital requirements:

(1) Hospital's Employee Health Nurse shall provide to each Company Staff, at Hospital's expense, an occupational health screening/service to include PPD or chest x-ray, drug screen, fit test, rubella titer, and other screenings/services as may be required from time to time by state and/or federal agencies and in accordance with Hospital policy and requirements. Such health screening/service shall not include services or screenings relating to any illness or injury arising from workers' compensation claims (i.e., injury, illness, tracking or medical services) or other personal illness or injury requiring medical attention or related health services. Results of all health screenings/services shall be provided to Hospital's Human Resources Director or designee prior to any Company Staff providing Services at Hospital.

(2) Hospital, at Hospital's expense, shall conduct a background investigation on each Company Staff who performs Services pursuant to this Agreement. A complete background investigation will include, at a minimum, all of the following elements: (1) 7-year criminal background check in current and previous counties of residence and employment; (2) confirmation that each Company Staff is not listed as a sexual offender; (3) evidence that each Company Staff is eligible to participate in all federal and state health programs and verification that each Company Staff is not in the Office of Inspector General's ("OIG") database of excluded individuals or the U.S. General Services Administration ("GSA") database; and (4) any other element required by Hospital to meet state law requirements. Results of the background screening shall be

Confidential - Not Subject to FOIA

TENET-OIG-00006186
TENET-OIG-00006186

provided to Hospital's Human Resources Director or designee prior to any Company Staff providing Services at Hospital.

    (3) All Company Staff shall attend Day 1 of Hospital's General Orientation.

    (4) All Company Staff shall attend Hospital's annual education program, complete required testing, and achieve a passing score (as defined by Hospital from time to time).

    (5) All Company Staff shall complete Hospital's annual ethics and compliance training.

    (6) All Company Staff shall view a videotape regarding Hospital's patient information privacy policies and practices in its entirety, complete required testing, and achieve a passing score (as defined by Hospital from time to time) on the questions at the end of the videotape.

    (7) All Company Staff shall abide by the Hospital's standardized uniform policy.

  e. **Patient Satisfaction Surveys.** Company shall conduct patient satisfaction surveys on a monthly basis. Results of such surveys will be made available to Hospital for quality and performance improvement purposes.

  f. **Representations and Warranties.** Company represents and warrants to Hospital as follows: (i) neither Company nor any Company Staff is bound by any agreement or arrangement which would preclude Company or any Company Staff from entering into, or from fully performing the Services required under this Agreement; (ii) no Company Staff's license or certification in the State or in any other jurisdiction has never been denied, suspended, revoked, terminated, relinquished under threat of disciplinary action, or restricted in any way; (iii) neither Company nor any of Company Staff has ever been charged with or convicted of a criminal offense related to health care or listed by a federal agency as debarred, excluded or otherwise ineligible for federal program participation; and (iv) all Company Staff shall provide interpretation services only pursuant to this Agreement and no Company Staff shall offer advice or make recommendations at any time regarding medical care to any patient or patient's family.

2. **Company Staff Evaluation and Competency**

  a. Hospital's Women's Health Director will provide Company with an evaluation of each Company Staff's performance on an annual basis.

  b. Hospital will assess the competency of each Company Staff utilizing the Hospital's standard interpreter competency assessment process and forms.

3. **COMPANY'S COMPENSATION.** For the Services rendered pursuant to this Agreement, Hospital shall pay Company, as its sole compensation hereunder, a monthly fee of Thirty-Four Thousand, Six Hundred Ninety-Two and 00/100 Dollars ($34,692.00) payable within 15 business days of the performance of the Services. Notwithstanding the foregoing, no compensation shall be

3

Confidential - Not Subject to FOIA

payable to Company for any services for which Company has not submitted such documentation as reasonably required by Hospital, including, without limitation, the IRS Form W-9 "Request for Taxpayer Identification Number and Certification." Company shall have the sole responsibility to compensate Company Staff. Company reserves the right, in its sole discretion, to determine the compensation payable to Company Staff. Company hereby agrees to indemnify and hold Hospital harmless from any and all claims, costs and/or liability suffered or incurred by Hospital in connection with any claims for compensation by Company Staff for Services rendered hereunder. The indemnification obligations herein stated in this Subsection shall survive the termination and/or expiration of this Agreement.

4. **TERM.** The term of this Agreement ("Term") shall be one (1) year commencing on the Effective Date. If the parties continue to abide by the terms and conditions of this Agreement without having executed a renewal or extension of this Agreement or advised the other party of such party's intent not to renew or extend this Agreement, then this Agreement shall automatically be extended on a month-to-month basis for up to six (6) months.

5. **TERMINATION.**

   a. **Termination Without Cause.** Either party may, in its sole discretion, terminate this Agreement without cause by giving the other party at least ninety (90) days' prior written notice.

   b. **Termination for Breach.** Either party may terminate this Agreement upon breach by the other party of any material provision of this Agreement, provided such breach continues for fifteen (15) days after receipt by the breaching party of written notice of such breach from the non-breaching party.

   c. **Immediate Termination by Hospital.** Hospital may terminate this Agreement immediately by written notice to Company upon the occurrence of any of the following: (i) breach by Company or any Company Staff of any of the confidentiality provisions hereof; (ii) closure of Hospital, cessation of the patient care operations or sale of Hospital or of all, or substantially all, of Hospital's assets; or (iii) Company or any of Company Staff's conviction of a criminal offense related to health care or Company or any Company Staff's listing by a federal agency as being debarred, excluded, or otherwise ineligible for federal program participation.

   d. **Termination for Changes in Law.** In the event that any governmental or nongovernmental agency, or any court or administrative tribunal passes, issues or promulgates any new, or change to any existing, law, rule, regulation, standard, interpretation, order, decision or judgment (individually or collectively, "Legal Event"), which a party (the "Noticing Party") reasonably believes (i) materially and adversely affects either party's licensure, accreditation, certification, or ability to refer, to accept any referral, to present a bill or claim, or to receive payment or reimbursement from any governmental or non-governmental payor, or (ii) indicates a Legal Event with which the Noticing Party desires further compliance, then, in either event, the Noticing Party may give the other party thirty (30) days prior written notice of its intent to amend or terminate this Agreement. Notwithstanding the foregoing, the Noticing Party may propose an amendment to the Agreement to take into account the Legal Event, and, if accepted by the other party prior to the end of the thirty (30) day notice period, the Agreement shall be amended as of the date of such acceptance and if not amended shall automatically terminate.

4

H:\PAT\WORDDOCL\Contracts\Clinica de la Mama\Clinica at NFRH agreement 12.09.doc

Confidential - Not Subject to FOIA

TENET-OIG-00006188
TENET-OIG-00006188

e. **Effect of Termination.** As of the effective date of termination of this Agreement, neither party shall have any further rights nor obligations hereunder except: (a) as otherwise provided herein; (b) for rights and obligations accruing prior to such effective date of termination; and (c) arising as a result of any breach of this Agreement.

6. **COMPANY'S STATUS.** In performing the Services, Company and Company Staff are acting as independent contractors, and neither Company nor Company Staff shall be considered an employee of Hospital. Hospital shall not exercise any control or direction over the manner or method by which Company provides the Services. However, Company shall require all Company Staff to perform at all times in accordance with currently approved methods and standards of practice for Services in the medical community. The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

7. **INSURANCE.**

Company shall secure and maintain at all times during the Term, at Company's sole expense, general liability insurance covering Company, and Company's Staff, with a carrier licensed to do business in the State and having at least an "A" BEST rating, at the following limits:

Commercial General Liability covering bodily injury and property damage to third parties and including Products/Completed Operations, Blanket Contractual Liability, and Personal/Advertising Injury:

> $1,000,000 per occurrence; $3,000,000 general aggregate
> and
> $1,000,000 per occurrence Personal/Advertising Injury
> $3,000,000 Products/Completed Operations aggregate

Such insurance shall name Hospital as an additional insured and shall not be cancelable except upon 30 days' prior written notice to Hospital. Such coverage shall be primary and non-contributory. Company shall annually provide Hospital a certificate of insurance evidencing such coverage and coverage extensions.

8. **ACCESS TO BOOKS AND RECORDS.** If the value or cost of Services rendered to Hospital pursuant to this Agreement is $10,000 or more over a 12-month period, in accordance with section 1861(v)(1)(I) of the Social Security Act, Company agrees that at least for four (4) years after the furnishing of such Services, Company shall, upon written request, make available to the Secretary of the United States Department of Health and Human Services (the "Secretary"), the Comptroller General of the United States, or their respective duly-authorized representatives, such books, documents, and records as may be necessary to certify the nature and extent of the cost of such Services.

9. **CONFIDENTIALITY.** Company and Company Staff agree to maintain and hold as confidential and to not disclose the terms of this Agreement or any confidential or proprietary information that Company or Company Staff may be provided during the term of this Agreement to any other person (with the exception of Company's or any Company Staff's legal counsel, accountant or financial advisors), unless disclosure thereof is required by law or otherwise authorized by this

5

Confidential - Not Subject to FOIA

TENET-OIG-00006189
TENET-OIG-00006189

Agreement or consented to in writing by Hospital. With respect to any patient or medical record information regarding Hospital patients, Company and Company Staff shall comply with all federal and state laws and regulations, and all bylaws, rules, regulations, and policies of Hospital and its medical staff, regarding the confidentiality of such information, including, without limitation, all applicable provisions and regulations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

10. **ARBITRATION.** Any dispute or controversy arising under, out of or in connection with, or in relation to this Agreement, or any amendment hereof, or the breach hereof shall be determined and settled by final and binding arbitration in the county in which the Hospital is located in accordance with the Commercial Rules of Arbitration ("Rules") of the Judicial Arbitration and Mediation Services ("JAMS") before one arbitrator applying the laws of the State. The parties shall attempt to mutually select the arbitrator. In the event they are unable to mutually agree, the arbitrator shall be selected by the procedures prescribed by the JAMS Rules. Any award rendered by the arbitrator shall be final and binding upon each of the parties, and judgment thereof may be entered in any court having jurisdiction thereof. The costs shall be borne equally by both parties. The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

11. **INDEMNIFICATION.** Both parties mutually agree to indemnify and hold each other harmless from and against all liability, losses, damages, claims, causes of action, cost or expenses (including reasonable attorneys' fees), which directly or indirectly arise from the performance of the Services hereunder by the indemnifying party, its agents, servants, representatives and/or employees.

12. **ENTIRE AGREEMENT; MODIFICATION; GOVERNING LAW, COUNTERPARTS; NOTICES, WAIVER; BINDING EFFECT.** This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, and all other communications between the parties relating to such subject matter. This Agreement may not be amended or modified except by mutual written agreement. This Agreement shall be construed in accordance with the laws of the State and shall survive the expiration or other termination of this Agreement. This Agreement may be executed in one or more counterparts, all of which together shall constitute only one Agreement. All notices hereunder shall be in writing, delivered personally, by certified or registered mail, return receipt requested, or by overnight courier, and shall be deemed to have been duly given when delivered personally or when deposited in the United States mail, postage prepaid, or deposited with the overnight courier, addressed at the place identified on the signature page below. A waiver by either party of a breach or failure to perform hereunder shall not constitute a waiver of any subsequent breach or failure. Company shall not assign or transfer, in whole or in part, this Agreement or any of Company's rights, duties or obligations under this Agreement without the prior written consent of Hospital, and any assignment or transfer by Company without such consent shall be null and void. This Agreement is assignable by Hospital without consent or notice.

13. **NON-DISCRIMINATION.** Company agrees to treat in a nondiscriminatory manner any and all patients receiving medical benefits or assistance under any federal health care program.

14. **COMPLIANCE OBLIGATIONS.** Company has received, read, understood, and shall abide by Tenet's Standards of Conduct. The parties to this Agreement shall comply with Tenet's Compliance Program and Tenet's policies and procedures related to the Deficit Reduction Act of

6

Confidential - Not Subject to FOIA

TENET-OIG-00006190
TENET-OIG-00006190

2005, Anti-Kickback Statute and the Stark Law. Tenet's Standards of Conduct, summary of Compliance Program, and policies and procedures, including a summary of the Federal False Claims Act and applicable state false claims laws (collectively "False Claims Laws") with descriptions of penalties and whistleblower protections pertaining to such laws, are available at: http://www.tenethealth.com/about/pages/ethicscompliance.aspx. Company shall make available to its employees providing services to Hospital the Standards of Conduct and information concerning Tenet's Compliance Program. Further, the parties to this Agreement certify that they shall not violate the Anti-Kickback Statute and Stark Law, and shall abide by the Deficit Reduction Act of 2005, as applicable, in performing services to Hospital. Hardcopies of any information shall be made available upon request.

15. **EXCLUSION LISTS SCREENING.** Company shall screen all of its current and prospective owners, legal entities, officers, directors, employees, contractors, and agents ("Screened Persons") against (a) the United States Department of Health and Human Services/Office of Inspector General List of Excluded Individuals/Entities (available through the Internet at http://www.oig.hhs.gov), and (b) the General Services Administration's List of Parties Excluded from Federal Programs (available through the Internet at http://www.epls.gov) (collectively, the "Exclusion Lists") to ensure that none of the Screened Persons are currently excluded, debarred, suspended, or otherwise ineligible to participate in Federal healthcare programs or in Federal procurement or nonprocurement programs, or have been convicted of a criminal offense that falls within the ambit of 42 U.S.C. § 1320a-7(a), but have not yet been excluded, debarred, suspended, or otherwise declared ineligible (each, an "Ineligible Person"). If, at any time during the term of this Agreement any Screened Person becomes an Ineligible Person or proposed to be an Ineligible Person, Company shall immediately notify Hospital of the same. Screened Persons shall not include any employee, contractor or agent who is not providing services under this Agreement.

16. **SURVIVAL.** The provisions of Sections 6, 8, 9, 10, and 11 shall survive expiration or termination of this Agreement regardless of the cause of such termination.

NORTH FULTON MEDICAL CENTER, INC.
d/b/a NORTH FULTON REGIONAL HOSPITAL

By: _____
Name: Deborah C. Keel
Title: Chief Executive Officer
Date: 12/4/09
Address: 3000 Hospital Boulevard
Roswell, GA 30076

HISPANIC MEDICAL MANAGEMENT, INC.
d/b/a CLINICA DE LA MAMA

By: _____
Name: Tracey Cota
Title: Chief Operating Officer
Date: 12/11/09
Address: 5127 Jimmy Carter Boulevard
Norcross, GA 30093

7

Confidential - Not Subject to FOIA

TENET-OIG-00006191
TENET-OIG-00006191

# EXHIBIT A

## DESCRIPTION OF DUTIES AND RESPONSIBILITIES

1. Staffing and management services provided by Company shall include:

    **Translation Services:** Company, as manager, shall provide bilingual Company Staff twenty-four (24) hours per day, seven (7) days per week as specified below to enable Hospital physicians and staff medical and clerical personnel to understand Hispanic speaking patients so that they can perform medical services on the Hispanic patients at the Hospital. Translation services are to be provided as needed in all patient care areas; including but not limited to, Women's Health, Operative Services, and the Emergency Department, as well as in any non-patient care area as needed.

    Two interpreters Monday through Friday from 7 a.m. until 11 p.m.
    Two interpreters Monday through Friday from 11 p.m. until 7 a.m.
    One interpreter Saturday and Sunday, 24 hr/day

    | | |
    |---|---|
    | 1,248 hrs/mo @ $16.50/hr. | $20,592 per month |
    | Oversight, management, benefits | $1,650 per month |

    **DOCUMENTATION REQUIRED:** Company Staff shall clock in and out from work at Hospital's time clocks. If any Company Staff fails to clock in or out on any given day, Company Staff's time for that day will be forfeited. Time Records will be maintained by Hospital's administration department. If during any month, Company Staff fail to clock a total of 1,248 hours, Hospital will deduct $16.50/hour from Company's compensation for each hour Company is short.

2. **Eligibility Determination Services.** Obtain all necessary patient information to determine the eligibility of Hispanic children patients for Peachcare or Permanent Medicaid and adult Hispanic patients for emergency medical assistance ("EMA"), Permanent Medicaid or Medically Needy Medicaid from the State or from any other applicable third party payor to cover Hospital Services.

    | | |
    |---|---|
    | 275 hours/month @ $30/hour | $8,250 per month |

    **DOCUMENTATION REQUIRED.** Hospital's Women's Health Director will forward to Hospital's administration department the daily work sheets completed by the Company Staff that will show compliance with this duty. Hospital will monitor Company's fulfillment of this obligation via a quarterly reconciliation conducted through the Performance Improvement ("PI") process.

B

Confidential - Not Subject to FOIA

TENET-OIG-00006192
TENET-OIG-00006192

**Other Services shall include:**

a. Company shall provide pre-natal work-up on each mother at thirty-two (32) weeks to Hospital's Women's Health Director.

b. Company shall provide complete information from Company's records to Hospital's Admissions Department for pre-registration of each patient.

c. Company will certify to Hospital's Health Information Management Department that all information required by the State for the baby's birth certificate is complete.

| | |
|---|---|
| 140 hours/month @ $30/hour | $4,200 per month |

**DOCUMENTATION REQUIRED.** Company's compliance with a. through c. above will be tracked by Hospital's Women's Health Director, Hospital's Admissions Manager, and Hospital's Health Information Management Director, respectively. Hospital will monitor Company's fulfillment of this obligation via a quarterly reconciliation conducted through the Performance Improvement ("PI") process.

B

Confidential - Not Subject to FOIA

## SERVICES AGREEMENT

THIS SERVICES AGREEMENT ("Agreement") is made and entered into as of the later of March 11, 2011, or the execution of the Agreement by both parties (the "Effective Date") between **North Fulton Medical Center, Inc.**, a Georgia corporation, doing business as North Fulton Hospital ("Hospital") and **Cota Medical Management Group, Inc.**, doing business as Clinica de la Mama ("Company").

### RECITALS:

A. Hospital is in need of translation and administrative services (the "Services"), and is in need of an experienced individual to provide the service.

B. Company employs or otherwise contracts with individuals duly qualified and experienced in furnishing the Services (collectively "Company Staff").

C. Company and Hospital agree that it is in the best interest of Hospital's ability to provide quality patient care in a cost-effective and efficient manner for Hospital to contract with an entity to provide the Services.

NOW, THEREFORE, for and in consideration of the recitals above and the mutual covenants and conditions contained herein, Hospital and Company agree as follows:

1. **COMPANY'S OBLIGATIONS.**

   a. **Services.** While this Agreement is in effect, Company shall provide Company Staff who are a minimum of twenty-one (21) years old to provide Services at Hospital as set forth in Exhibit A attached hereto and made a part hereof.

   b. **Performance.** Company and its Company Staff agree that all Services provided pursuant to this Agreement shall be performed in compliance with all standards set forth by law or ordinance or established by the rules and regulations of any federal, state or local agency, department, commission, association or other pertinent governing, accrediting, or advisory body, including The Joint Commission ("Joint Commission"), having authority to set standards for health care facilities. At all times while this Agreement is in effect, the CEO shall have the right to request removal of any such Company Staff if in the CEO's best judgment such removal is in the best interests of Hospital. Company hereby agrees to immediately remove any such Company Staff upon receipt of the CEO's request.

   c. **Company Staff Required Documentation.** Company shall provide competent Company Staff to meet Hospital's needs with regard to Hispanic speaking patients. Documentation by Company shall include, but not be limited to, obtaining the following pertinent information concerning all past employment, licensure, certifications, education, and professional skills of Company Staff:

1

H:\PAT\WORDDOCU\Policies\Contracts\Clinica de la Mama\Clinica agreement 3.11.doc
11/23/2010

Confidential - Not Subject to FOIA

TENET-OIG-00006116
TENET-OIG-00006116

(1) Proof of a minimum of one year of medical interpretation experience in a healthcare setting.

(2) Proof of compliance with applicable immigration laws and maintenance of current I-9 documentation.

(3) Company shall maintain current written employee releases from all Company Staff provided under this Agreement to permit Hospital access to their medical file. Information on physical limitations or impairments and other medical information shall be collected and maintained in accordance with all applicable anti-discrimination laws including, without limitation, the State's Labor Code, the Rehabilitation Act of 1974 and the Americans with Disabilities Act of 1991.

(4) One professional reference.

(5) Company Staff must be able to speak, write, and read the English and Spanish languages sufficiently to communicate with patients and staff and to complete required documentation.

(6) Job Description signed by Company Staff.

(7) Proof of each Company Staff's competency to provide the Services shall be provided to Hospital on an annual basis.

Company Staff shall not begin work at Hospital until items required in this Subsection 1.c. (1) through (7) are provided to and approved by the Hospital's Human Resources Director or designee.

d. **Company Staff Required Screenings, Background Investigation, Orientation, Annual Education, Ethics and Compliance Training, Privacy Videotape and Dress Code.** Company shall require all Company Staff to comply with the following Hospital requirements:

(1) Hospital's Employee Health Nurse shall provide to each Company Staff, at Hospital's expense, an occupational health screening/service to include PPD or chest x-ray, drug screen, fit test, rubella titer, and other screenings/services as may be required from time to time by state and/or federal agencies and in accordance with Hospital policy and requirements. Such health screening/service shall not include services or screenings relating to any illness or injury arising from workers' compensation claims (i.e., injury, illness, tracking or medical services) or other personal illness or injury requiring medical attention or related health services. Results of all health screenings/services shall be provided to Hospital's Human Resources Director or designee prior to any Company Staff providing Services at Hospital.

(2) Hospital, at Hospital's expense, shall conduct a background investigation on each Company Staff who performs Services pursuant to this Agreement. A complete background investigation will include, at a minimum, all of the following elements:

2

H:\PAT\WORDDOCU\Policies\Contracts\Clinica de la Mama\Clinica agreement 3.11.doc
11/23/2010

Confidential - Not Subject to FOIA

TENET-OIG-00006117
TENET-OIG-00006117

(1) 7-year criminal background check in current and previous counties of residence and employment; (2) confirmation that each Company Staff is not listed as a sexual offender; (3) evidence that each Company Staff is eligible to participate in all federal and state health programs and verification that each Company Staff is not in the Office of Inspector General's ("OIG") database of excluded individuals or the U.S. General Services Administration ("GSA") database; and (4) any other element required by Hospital to meet state law requirements. Results of the background screening shall be provided to Hospital's Human Resources Director or designee prior to any Company Staff providing Services at Hospital.

(3) All Company Staff shall attend Day 1 of Hospital's General Orientation.

(4) All Company Staff shall attend Hospital's annual education program, complete required testing, and achieve a passing score (as defined by Hospital from time to time).

(5) All Company Staff shall complete Hospital's annual ethics and compliance training.

(6) All Company Staff shall view a videotape regarding Hospital's patient information privacy policies and practices in its entirety, complete required testing, and achieve a passing score (as defined by Hospital from time to time) on the questions at the end of the videotape.

(7) All Company Staff shall abide by the Hospital's standardized uniform policy.

e. **Patient Satisfaction Surveys.** Company shall conduct patient satisfaction surveys on a monthly basis. Results of such surveys will be made available to Hospital for quality and performance improvement purposes.

f. **Representations and Warranties.** Company represents and warrants to Hospital as follows: (i) neither Company nor any Company Staff is bound by any agreement or arrangement which would preclude Company or any Company Staff from entering into, or from fully performing the Services required under this Agreement; (ii) no Company Staff's license or certification in the State or in any other jurisdiction has never been denied, suspended, revoked, terminated, relinquished under threat of disciplinary action, or restricted in any way; (iii) neither Company nor any of Company Staff has ever been charged with or convicted of a criminal offense related to health care or listed by a federal agency as debarred, excluded or otherwise ineligible for federal program participation; and (iv) all Company Staff shall provide interpretation services only pursuant to this Agreement and no Company Staff shall offer advice or make recommendations at any time regarding medical care to any patient or patient's family.

2. **Company Staff Evaluation and Competency**

a. Hospital's Women's Health Director will provide Company with an evaluation of each Company Staff's performance on an annual basis.

3

H:\PAT\WORDDOCU\Policies\Contracts\Clinica de la Mama\Clinica agreement 3.11.doc
11/23/2010

Confidential - Not Subject to FOIA

TENET-OIG-00006118
TENET-OIG-00006118

b. Hospital will assess the competency of each Company Staff utilizing the Hospital's standard interpreter competency assessment process and forms.

3. **COMPANY'S COMPENSATION.** For the Services rendered pursuant to this Agreement, Hospital shall pay Company, as its sole compensation hereunder, a monthly fee of Sixteen Thousand, Two Hundred Twelve and 00/100 Dollars ($16,212.00) **plus** $67.60 per Eligibility Determination Screening conducted payable within 15 business days of receipt of written documentation of the performance of the Services. Notwithstanding the foregoing, no compensation shall be payable to Company for any services for which Company has not submitted such documentation as reasonably required by Hospital, including, without limitation, the IRS Form W-9 "Request for Taxpayer Identification Number and Certification." Company shall have the sole responsibility to compensate Company Staff. Company reserves the right, in its sole discretion, to determine the compensation payable to Company Staff. Company hereby agrees to indemnify and hold Hospital harmless from any and all claims, costs and/or liability suffered or incurred by Hospital in connection with any claims for compensation by Company Staff for Services rendered hereunder. The indemnification obligations herein stated in this Subsection shall survive the termination and/or expiration of this Agreement.

4. **TERM.** The term of this Agreement ("Term") shall be two (2) years commencing on the Effective Date. If the parties continue to abide by the terms and conditions of this Agreement without having executed a renewal or extension of this Agreement or advised the other party of such party's intent not to renew or extend this Agreement, then this Agreement shall automatically be extended on a month-to-month basis for up to six (6) months.

5. **TERMINATION.**

a. **Termination Without Cause.** Either party may, in its sole discretion, terminate this Agreement without cause by giving the other party at least ninety (90) days' prior written notice.

b. **Termination for Breach.** Either party may terminate this Agreement upon breach by the other party of any material provision of this Agreement, provided such breach continues for fifteen (15) days after receipt by the breaching party of written notice of such breach from the non-breaching party.

c. **Immediate Termination by Hospital.** Hospital may terminate this Agreement immediately by written notice to Company upon the occurrence of any of the following: (i) breach by Company or any Company Staff of any of the confidentiality provisions hereof; (ii) closure of Hospital, cessation of the patient care operations or sale of Hospital or of all, or substantially all, of Hospital's assets; or (iii) Company or any of Company Staff's conviction of a criminal offense related to health care or Company or any Company Staff's listing by a federal agency as being debarred, excluded, or otherwise ineligible for federal program participation.

4

H:\PAT\WORDDOCU\Policies\Contracts\Clinica de la Mama\Clinica agreement 3.11.doc
11/23/2010

Confidential - Not Subject to FOIA

TENET-OIG-00006119
TENET-OIG-00006119

d. **Termination for Changes in Law.** In the event that any governmental or nongovernmental agency, or any court or administrative tribunal passes, issues or promulgates any new, or change to any existing, law, rule, regulation, standard, interpretation, order, decision or judgment (individually or collectively, "Legal Event"), which a party (the "Noticing Party") reasonably believes (i) materially and adversely affects either party's licensure, accreditation, certification, or ability to refer, to accept any referral, to present a bill or claim, or to receive payment or reimbursement from any governmental or non-governmental payor, or (ii) indicates a Legal Event with which the Noticing Party desires further compliance, then, in either event, the Noticing Party may give the other party thirty (30) days prior written notice of its intent to amend or terminate this Agreement. Notwithstanding the foregoing, the Noticing Party may propose an amendment to the Agreement to take into account the Legal Event, and, if accepted by the other party prior to the end of the thirty (30) day notice period, the Agreement shall be amended as of the date of such acceptance and if not amended shall automatically terminate.

e. **Effect of Termination.** As of the effective date of termination of this Agreement, neither party shall have any further rights or obligations hereunder except: (a) as otherwise provided herein; (b) for rights and obligations accruing prior to such effective date of termination; and (c) arising as a result of any breach of this Agreement.

6. **COMPANY'S STATUS.** In performing the Services, Company and Company Staff are acting as independent contractors, and neither Company nor Company Staff shall be considered an employee of Hospital. Hospital shall not exercise any control or direction over the manner or method by which Company provides the Services. However, Company shall require all Company Staff to perform at all times in accordance with currently approved methods and standards of practice for Services in the medical community. The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

7. **INSURANCE.**

Company shall secure and maintain at all times during the Term, at Company's sole expense, general liability insurance covering Company, and Company's Staff, with a carrier licensed to do business in the State and having at least an "A" BEST rating, at the following limits:

Commercial General Liability covering bodily injury and property damage to third parties and including Products/Completed Operations, Blanket Contractual Liability, and Personal/Advertising Injury:

> $1,000,000 per occurrence; $3,000,000 general aggregate
> and
> $1,000,000 per occurrence Personal/Advertising Injury
> $3,000,000 Products/Completed Operations aggregate

Such insurance shall name Hospital as an additional insured and shall not be cancelable except upon 30 days' prior written notice to Hospital. Such coverage shall be primary and non-

5

H:\PAT\WORDDOCU\Policies\Contracts\Clinica de la Mama\Clinica agreement 3.11.doc
11/23/2010

Confidential - Not Subject to FOIA

contributory. Company shall annually provide Hospital a certificate of insurance evidencing such coverage and coverage extensions.

8. **ACCESS TO BOOKS AND RECORDS.** If the value or cost of Services rendered to Hospital pursuant to this Agreement is $10,000 or more over a 12-month period, in accordance with section 1861(v)(1)(I) of the Social Security Act, Company agrees that at least for four (4) years after the furnishing of such Services, Company shall, upon written request, make available to the Secretary of the United States Department of Health and Human Services (the "Secretary"), the Comptroller General of the United States, or their respective duly-authorized representatives, such books, documents, and records as may be necessary to certify the nature and extent of the cost of such Services.

9. **CONFIDENTIALITY.** Company and Company Staff agree to maintain and hold as confidential and to not disclose the terms of this Agreement or any confidential or proprietary information that Company or Company Staff may be provided during the term of this Agreement to any other person (with the exception of Company's or any Company Staff's legal counsel, accountant or financial advisors), unless disclosure thereof is required by law or otherwise authorized by this Agreement or consented to in writing by Hospital. With respect to any patient or medical record information regarding Hospital patients, Company and Company Staff shall comply with all federal and state laws and regulations, and all bylaws, rules, regulations, and policies of Hospital and its medical staff, regarding the confidentiality of such information, including, without limitation, all applicable provisions and regulations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

10. **ARBITRATION.** Any dispute or controversy arising under, out of or in connection with, or in relation to this Agreement, or any amendment hereof, or the breach hereof shall be determined and settled by final and binding arbitration in the county in which the Hospital is located in accordance with the Commercial Rules of Arbitration ("Rules") of the Judicial Arbitration and Mediation Services ("JAMS") before one arbitrator applying the laws of the State. The parties shall attempt to mutually select the arbitrator. In the event they are unable to mutually agree, the arbitrator shall be selected by the procedures prescribed by the JAMS Rules. Any award rendered by the arbitrator shall be final and binding upon each of the parties, and judgment thereof may be entered in any court having jurisdiction thereof. The costs shall be borne equally by both parties. The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

11. **INDEMNIFICATION.** Both parties mutually agree to indemnify and hold each other harmless from and against all liability, losses, damages, claims, causes of action, cost or expenses (including reasonable attorneys' fees), which directly or indirectly arise from the performance of the Services hereunder by the indemnifying party, its agents, servants, representatives and/or employees.

12. **ENTIRE AGREEMENT; MODIFICATION; GOVERNING LAW; COUNTERPARTS; NOTICES; WAIVER; ASSIGNMENT.** This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, and all other communications between the parties relating to such subject matter. This

6

H:\PAT\WORDDOCU\Policies\Contracts\Clinica de la Mama\Clinica agreement 3.11.doc
11/23/2010

Confidential - Not Subject to FOIA

Agreement may not be amended or modified except by mutual written agreement. This Agreement shall be construed in accordance with the laws of the State, which provision shall survive the expiration or other termination of this Agreement. This Agreement may be executed in one or more counterparts, all of which together shall constitute only one Agreement. All notices hereunder shall be in writing, delivered personally, by certified or registered mail, return receipt requested, or by overnight courier, and shall be deemed to have been duly given when delivered personally or when deposited in the United States mail, postage prepaid, or deposited with the overnight courier, addressed at the place identified on the signature page below. A waiver by either party of a breach or failure to perform hereunder shall not constitute a waiver of any subsequent breach or failure. Company shall not assign or transfer, in whole or in part, this Agreement or any of Company's rights, duties or obligations under this Agreement without the prior written consent of Hospital, and any assignment or transfer by Company without such consent shall be null and void. This Agreement is assignable by Hospital without consent or notice.

13. **NON-DISCRIMINATION.** Company agrees to treat in a nondiscriminatory manner any and all patients receiving medical benefits or assistance under any federal health care program.

14. **COMPLIANCE OBLIGATIONS.** Company represents that it read, understands, and shall abide by Tenet's Standards of Conduct. The parties to this Agreement shall comply with Tenet's Compliance Program and Tenet's policies and procedures related to the Deficit Reduction Act of 2005, Anti-Kickback Statute and the Stark Law. Tenet's Standards of Conduct, summary of Compliance Program, and policies and procedures, including a summary of the Federal False Claims Act and applicable state false claims laws (collectively "False Claims Laws") with descriptions of penalties and whistleblower protections pertaining to such laws, are available at: http://www.tenethealth.com/about/pages/ethicscompliance.aspx. Company shall require any employees providing services to Hospital to read the Standards of Conduct and information concerning Tenet's Compliance Program and abide by same. Further, the parties to this Agreement certify that they shall not violate the Anti-Kickback Statute and Stark Law, and shall abide by the Deficit Reduction Act of 2005, as applicable, in providing services to Hospital. Hardcopies of any information shall be made available upon request.

15. **EXCLUSION LISTS SCREENING.** Company shall screen all of its current and prospective owners, legal entities, officers, directors, employees, contractors, and agents ("Screened Persons") against (a) the United States Department of Health and Human Services/Office of Inspector General List of Excluded Individuals/Entities (available through the Internet at http://www.oig.hhs.gov), and (b) the General Services Administration's List of Parties Excluded from Federal Programs (available through the Internet at http://www.epls.gov) (collectively, the "Exclusion Lists") to ensure that none of the Screened Persons are currently excluded, debarred, suspended, or otherwise ineligible to participate in Federal healthcare programs or in Federal procurement or nonprocurement programs, or have been convicted of a criminal offense that falls within the ambit of 42 U.S.C. § 1320a-7(a), but have not yet been excluded, debarred, suspended, or otherwise declared ineligible (each, an "Ineligible Person"). If, at any time during the term of this Agreement any Screened Person becomes an Ineligible Person or proposed to be an Ineligible Person, Company shall immediately notify Hospital of the

7

Confidential - Not Subject to FOIA

same. Screened Persons shall not include any employee, contractor or agent who is not providing services under this Agreement.

16. SURVIVAL. The provisions of Sections 6, 8, 9, 10 and 11 shall survive expiration or termination of this Agreement regardless of the cause of such termination.

NORTH FULTON MEDICAL CENTER, INC.
d/b/a NORTH FULTON HOSPITAL

By: _____
Name: Deborah C. Keel
Title: Chief Executive Officer
Date: 3/9/11
Address: 3000 Hospital Boulevard
Roswell, GA 30076

COTA MEDICAL MANAGEMENT GROUP, INC.
d/b/a Clinica de la Mama

By: _____
Name: Ed T. Cota
Title: Chief Executive Officer
Date: 3-6-2011
Address: 936 Holcomb Bridge Road
Roswell, GA 30076

8

H:\PAT\WORDDOCU\Policies\Contracts\Clinica de la Mama\Clinica agreement 3 11.doc
11/23/2010

Confidential - Not Subject to FOIA

TENET-OIG-00006123
TENET-OIG-00006123

# EXHIBIT A

## DESCRIPTION OF DUTIES AND RESPONSIBILITIES

1. Staffing and management services provided by Company shall include:

   **Translation Services:** Company, as manager, shall provide bilingual Company Staff twenty-four (24) hours per day, seven (7) days per week as specified below to enable Hospital physicians and staff medical and clerical personnel to understand Hispanic speaking patients so that they can perform medical services on the Hispanic patients at the Hospital. Translation services are to be provided as needed in all patient care areas; including but not limited to, Women's Health, Operative Services, and the Emergency Department, as well as in any non-patient care area as needed.

   One interpreter Monday through Friday from 7 a.m. until 11 p.m.*
   One interpreter Monday through Friday from 11 p.m. until 7 a.m.*
   One interpreter Saturday and Sunday, 24 hr/day

   728 hrs/mo @ $16.50/hr.                    $12,012 per month

   * At Hospital's request, based upon its determination of increased or decreased need for translation services, and subject to Company's capacity to provide, additional interpreters may be added or deleted from the schedule at the same hourly rate with thirty (30) days' prior written notice. Such additional staffing shall not exceed three interpreters per weekday shifts or two interpreters per day on the weekend.

   **DOCUMENTATION REQUIRED:** Company Staff shall clock in and out from work at Hospital's time clocks. If any Company Staff fails to clock in or out on any given day, Company Staff's time for that day will be forfeited. Time Records will be maintained by Hospital's administration department. If during any month, Company Staff fail to clock a total of 728 hours, Hospital will deduct $16.50/hour from Company's compensation for each hour Company is short.

2. **Eligibility Determination Services.** Obtain all necessary patient information to determine the eligibility of Hispanic children patients for Peachcare or Permanent Medicaid and adult Hispanic patients for emergency medical assistance ("EMA"), Permanent Medicaid or Medically Needy Medicaid from the State or from any other applicable third party payor to cover Hospital Services.

   $67.50 per Eligibility Determination Screening Conducted

   **DOCUMENTATION REQUIRED.** Hospital's Women's Health Director will forward to Hospital's administration department the daily work sheets completed by the Company Staff that will show compliance with this duty. Hospital will monitor Company's

B

Confidential - Not Subject to FOIA

TENET-OIG-00006124
TENET-OIG-00006124

fulfillment of this obligation via a quarterly reconciliation conducted through the Performance Improvement ("PI") process.

**Other Services shall include:**

a. Company shall provide pre-natal work-up on each mother at thirty-two (32) weeks to Hospital's Women's Health Director.

b. Company shall provide complete information from Company's records to Hospital's Admissions Department for pre-registration of each patient.

c. Company will certify to Hospital's Health Information Management Department that all information required by the State for the baby's birth certificate is complete.

140 hours/month @ $30/hour                $4,200 per month

**DOCUMENTATION REQUIRED.** Company's compliance with a. through c. above will be tracked by Hospital's Women's Health Director, Hospital's Admissions Manager, and Hospital's Health Information Management Director, respectively. Hospital will monitor Company's fulfillment of this obligation via a quarterly reconciliation conducted through the Performance Improvement ("PI") process.

B

Confidential - Not Subject to FOIA

TENET-OIG-00006125
TENET-OIG-00006125