# SERVICES AGREEMENT

Actl.

THIS SERVICES AGREEMENT ("Agreement") is made and entered into as of February 1, 2004 (the "Effective Date") between TENET HEALTHSYSTEM SPALDING, INC., a Georgia corporation, doing business as Spalding Regional Medical Center ("Hospital") and HISPANIC MEDICAL MANAGEMENT, INC., a Georgia corporation, doing business as Clinica de la Mama ("Company").

## RECITALS:

A. Hospital operates an acute care hospital known as Spalding Regional Medical Center ("Facility"), located in Georgia ("State"), and is in need of translation and administration services for its Hispanic patients (the "Services").

B. Company employs or otherwise contracts with individuals duly qualified and experienced in furnishing the Services (collectively "Company Staff").

C. Company and Hospital agree that it is in the best interest of Hospital's ability to provide quality patient care in a cost-effective and efficient manner for Hospital to contract with an entity to provide the Services.

NOW, THEREFORE, for and in consideration of the recitals above and the mutual covenants and conditions contained herein, Hospital and Company agree as follows:

1. **COMPANY'S OBLIGATIONS.**

   a. **Services.** While this Agreement is in effect, Company shall provide Services at Facility as are set forth in Exhibit A attached hereto and made a part hereof.

   b. **Performance.** The Services to be rendered hereunder shall be performed by Company Staff as may be employed by or under contract with Company. At all times while this Agreement is in effect, the Facility's Chief Executive Officer ("CEO") shall have the right to request removal of any such Company Staff if, in the CEO's best judgment, such removal is in the best interests of Hospital. Company hereby agrees to immediately remove any such individual upon receipt of the CEO's request.

   c. **Applicable Standards.** Company and its Company Staff agree that all Services provided pursuant to this Agreement shall be performed in compliance with all applicable standards set forth by law or ordinance or established by the rules and regulations of any federal, state or local agency, department, commission, association or other pertinent governing, accrediting, or advisory body, including the Joint Commission on Accreditation of

C:\USERS\KMCGUIRE\KILLI\CLINICA\CLINICA AGREEMENT FINAL.DOC
3/1/2004

1

Confidential - Not Subject to FOIA

TENET-OIG-00000309

EXHIBIT 16

Healthcare Organizations ("Joint Commission"), having authority to set standards for health care facilities.

    d. **Company Staff Screening.** Company shall provide competent Company Staff to meet Facility's needs with regard to Hispanic speaking patients. Screening by Company shall include, but not be limited to, obtaining the following pertinent information concerning all past employment, licensure, certifications, education, and professional skills of Company Staff:

    (1) Proof of current original licensure and appropriate certification in the State, which licensure and certifications, if any, must be presented to Facility by Company Staff upon reporting for work, per Hospital guidelines.

    (2) Proof of a minimum of one year of prior work experience in a health care environment.

    (3) Proof of compliance with applicable immigration laws and maintenance of current I-9 documentation.

    (4) Proof of current PPD, MMR and hepatitis (within one year), record of immunizations, and identified physical limitations. Company shall maintain current written employee releases from all Company Staff provided under this Agreement to permit Hospital access to their medical file. Information on physical limitations or impairments and other medical information shall be collected and maintained in accordance with all applicable anti-discrimination laws including, without limitation, the State's Labor Code, the Rehabilitation Act of 1974 and the Americans with Disabilities Act of 1991.

    (5) Minimum of two professional references.

    (6) Company Staff must be able to speak, write, and read the English and Spanish languages sufficiently to communicate with patients and staff and to complete required documentation.

    (7) Proof of successful completion of a drug screening immediately prior to beginning work at Facility.

    (8) Proof that Company Staff has passed a background check as required by Facility regarding any prior criminal convictions.

    (9) Job Description signed by Company Staff.

    (10) Proof of attendance at Facility's General Orientation.

C:\USERS\KMCGUIRE\KILLEEN\CLINICA\CLINICA AGREEMENT FINAL.DOC
3/1/2004

2

Confidential - Not Subject to FOIA

TENET-OIG-00000310

Company Staff shall not begin work at Facility until items required in this Subsections 1.d.(1) through (10) are provided to and approved by the Facility's Human Resources Department. In addition to the above-listed items, Company Staff will attend Facility's annual ethics training and all other required annual in-service education.

  e. **Patient Satisfaction Surveys.** Company shall conduct patient satisfaction surveys on a monthly basis. Results of such surveys will be made available to Facility for quality and performance improvement purposes.

  f. **Use of Premises.** Company Staff shall not use, or knowingly permit any other person who is under their direction to use, any part of Facility's premises for any purpose other than the performance of Services for Facility pursuant to this Agreement.

  g. **Representations and Warranties.** Company represents and warrants to Hospital as follows:

   (1) Neither Company nor any of Company Staff is bound by any agreement or arrangement which would preclude Company or any of Company Staff from entering into, or from fully performing the Services required under, this Agreement;

   (2) No Company Staff's license or certification in the State or in any other jurisdiction has ever been denied, suspended, revoked, terminated, relinquished under threat of disciplinary action, or restricted in any way; and

   (3) Neither Company nor any of Company Staff has ever been convicted of a criminal offense related to health care or listed by a federal agency as debarred, excluded or otherwise ineligible for federal program participation.

2. **HOSPITAL'S OBLIGATIONS.**

  a. **Equipment, Facilities, Supplies, Utilities and Services.** Hospital shall, at no cost to Company, provide all equipment, facilities, supplies, utilities, including telephone service, and other services, including laundry, linen and janitorial services, as the Hospital shall, in its sole discretion, determine from time to time to be necessary for the performance of the Services. The parties expressly agree that all items supplied by Hospital pursuant to this Subsection shall remain the exclusive personal property of Hospital.

  b. **Personnel.** Hospital shall employ such non-physician personnel as Hospital deems necessary for the proper performance of the Services or any other Company obligation set forth in this Agreement.

C:\USERS\KMCGUIRE\KELLEY'S CLINIC\A\CLINICA AGREEMENT FINAL.DXX`
3/1/2014

3

Confidential - Not Subject to FOIA  TENET-OIG-00000311

3. **COMPANY'S COMPENSATION.**

a. **Fees.** For the Services rendered pursuant to this Agreement, Hospital shall pay Company, as its sole compensation hereunder, a semi-monthly fee in accordance with Exhibit A, payable within 15 days of receipt of written documentation of the performance of the Services. Notwithstanding the foregoing, no compensation shall be payable to Company for any services for which Company has not submitted such documentation as reasonably required by Hospital, including, without limitation, the IRS Form W-9 "Request for Taxpayer Identification Number and Certification" and the documentation set forth in Exhibit A, Subsections 3.a and 3.b.

b. **Entire Compensation.** Company shall have the sole responsibility to compensate Company Staff. Company reserves the right, in its sole discretion, to determine the compensation payable to Company Staff. Company hereby agrees to indemnify and hold Hospital harmless from any and all claims, costs and/or liability suffered or incurred by Hospital in connection with any claims for compensation by Company Staff for Services rendered hereunder. The indemnification obligations herein stated in this Subsection shall survive the termination and/or expiration of this Agreement.

4. **TERM AND TERMINATION.**

a. **Term.** The initial term of this Agreement ("Initial Term") shall be two years commencing on the Effective Date. At the end of the Initial Term and any Term Extension (as defined herein), the term of this Agreement may be extended for an additional period of one year (a "Term Extension"), but only upon mutual written agreement of the parties. As used herein, "Term" shall mean the period of time beginning on the Effective Date and ending on the last day of either the Initial Term or the last Term Extension, as applicable.

b. **Termination.**

(1) **Termination Without Cause.** At any time after expiration of the first year of the Term, either party may, in its sole discretion, terminate this Agreement without cause by giving the other party at least 90 days' prior written notice. If such notice is given by Hospital, Hospital may, in its sole discretion, at any time prior to the effective date of such termination, relieve Company of Company's duties hereunder as long as Hospital continues to perform its obligations under this Agreement until the effective date of such termination.

(2) **Termination for Good Cause.** At any time during the Term of this Agreement, either party may terminate this Agreement for "Good Cause" (as defined herein) by giving the other party at least 90 days' prior written notice. "Good Cause" means that the arrangement reflected by this Agreement has become unsatisfactory to the terminating party as determined in its sole discretion.

Confidential - Not Subject to FOIA

TENET-OIG-00000312

(3) **Termination for Breach.** Either party may terminate this Agreement upon breach by the other party of any material provision of this Agreement, provided such breach continues for 15 days after receipt by the breaching party of written notice of such breach from the non-breaching party.

(4) **Immediate Termination by Hospital.** Hospital may terminate this Agreement immediately by written notice to Company upon the occurrence of any of the following:

(a) the failure of Company or Company Staff to make a disclosure in accordance with Section 9 hereof;

(b) conduct by Company or any Company Staff which, in the sole discretion of Hospital, could affect the quality of professional care provided to Facility patients, the performance of duties required hereunder, or which could be prejudicial or adverse to the best interest and welfare of Facility or its patients;

(c) breach by Company or any Company Staff of any of the confidentiality provisions hereof;

(d) failure by Company to maintain the insurance required under this Agreement;

(e) closure of Facility, cessation of the patient care operations or sale of Facility or of all, or substantially all, of Facility's assets; or

(f) Company or any of Company Staff's conviction of a criminal offense related to health care or Company or any Company Staff's listing by a federal agency as being debarred, excluded, or otherwise ineligible for federal program participation.

Company may cure such breach caused by any Company Staff under this Subsection 4.b.(4) by immediately terminating all employment and other Company-based professional and business relationships with such Company Staff and preventing said Company Staff from providing any Services hereunder.

(5) **Effect of Termination.** As of the effective date of termination of this Agreement, neither party shall have any further rights nor obligations hereunder except: (a) as otherwise provided herein; (b) for rights and obligations accruing prior to such effective date of termination; and (c) arising as a result of any breach of this Agreement.

5. **COMPANY'S STATUS.** Company and each Company Staff shall act at all times under this Agreement as independent contractors. The parties agree that Hospital shall not have and shall not exercise any control or direction over the manner or method by which each of

Confidential - Not Subject to FOIA

TENET-OIG-00000313

Company Staff provides the Services. However, Company shall require all of Company Staff to perform at all times in accordance with currently approved methods and standards of practice for Services in the community. The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

6. INSURANCE.

a. Company shall secure and maintain at all times during the Term, at Company's sole expense, commercial general liability insurance, covering Company, all Company Staff and all of Company's employees, with a carrier licensed to do business in the State and having at least an "A" BEST rating, at the following limits:

Commercial General Liability covering bodily injury and property damage to third parties and including Products/Completed Operations, Blanket Contractual Liability, and Personal/Advertising Injury:

> $1,000,000 per occurrence; $3,000,000 general aggregate
> and
> $1,000,000 per occurrence Personal/Advertising Injury
> $3,000,000 Products/Completed Operations aggregate

Such insurance shall name Hospital as an additional insured and shall not be cancelable except upon 30 days' prior written notice to Hospital. Such coverage shall be primary and non-contributory. Company shall annually provide Hospital a certificate of insurance evidencing such coverage and coverage extensions.

b. Company shall also secure and maintain at all times during the Term, at Company's sole expense, workers' compensation and employers' liability insurance covering Company's employees and all Company Staff, with a carrier licensed to do business in the State and having at least an "A" BEST rating, at the following limits:

| Workers' Compensation: | Statutory limits |
|---|---|
| Employers' Liability: | $1,000,000 each accident; |
|  | $1,000,000 disease policy limit; |
|  | $1,000,000 disease each employee |

Such coverage shall be placed as an actual Workers' Compensation policy, not as a health benefits policy, and shall be endorsed to include (1) a waiver of subrogation in favor of Hospital, and (2) a 30-day notice of cancellation. Such coverage shall be primary and non-contributory. Company shall annually provide a certificate of insurance to Hospital evidencing such coverage and coverage extensions.

Confidential - Not Subject to FOIA

TENET-OIG-00000314

c. Company shall require all Company Staff to secure and maintain at all times during the Term, at each Company Staff's sole expense, personal auto liability covering Company Staff, and any vehicle which Company Staff will bring onto Hospital property, with a carrier licensed to do business in the State and having at least an "A" BEST rating. Such coverage shall be primary and non-contributory and procured at the minimum statutory limits promulgated by the State, but in any event no less than:

> 25,000 bodily injury per person
> 50,000 bodily injury per accident
> $25,000 property damage

7. ACCESS TO BOOKS AND RECORDS.

    a. If the value or cost of Services rendered to Hospital pursuant to this Agreement is $10,000 or more over a 12-month period, in accordance with section 1861(v)(1)(I) of the Social Security Act, Company agrees as follows:

        (1) Until the expiration of four years after the furnishing of such Services, Company shall, upon written request, make available to the Secretary of the United States Department of Health and Human Services (the "Secretary"), the Comptroller General of the United States, or their respective duly-authorized representatives, such books, documents, and records as may be necessary to certify the nature and extent of the cost of such Services; and

        (2) If any such Services are performed by way of subcontract with a related organization and the value or cost of such subcontracted services is $10,000 or more over a 12-month period, such subcontract shall contain, and Company shall enforce, a clause to the same effect as Subsection 7.a.(1) above.

    b. The availability of Company's books, documents, and records shall be subject at all times to all applicable legal requirements, including, without limitation, such criteria and procedures for seeking and obtaining access that may be promulgated by the Secretary by regulation. The provisions of Subsections 7.a. and 7.b. shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

8. CONFIDENTIALITY.

    a. **Hospital Information.** Company recognizes and acknowledges that, by virtue of entering into this Agreement and providing services to Hospital hereunder, Company and Company Staff may have access to certain information of Hospital that is confidential and constitutes valuable, special and unique property of Hospital. Company agrees that neither Company nor any Company Staff will at any time, (either during or subsequent to the term of this Agreement), disclose to others, use, copy or permit to be copied, without Hospital's express prior written consent, except in connection with the performing of Company's and Company

C:\USERS\KMCGUIRE\KELLER\CLINICA\CLINICA AGREEMENT FINAL.DOC
3/1/2004

7

Confidential - Not Subject to FOIA

TENET-OIG-00000315

Staff's duties hereunder, any confidential or proprietary information of Hospital, including, without limitation, information which concerns Facility's patients, costs, or treatment methods developed by Hospital for the Facility, and which is not otherwise available to the public.

    b.    **Terms of this Agreement.** Except for disclosure to Company's or any Company Staff's legal counsel, accountant or financial advisors (none of whom shall be associated or affiliated in any way with Hospital or any of its affiliates), neither Company nor any Company Staff shall disclose the terms of this Agreement to any person, unless disclosure thereof is required by law or otherwise authorized by this Agreement or consented to by Hospital. Unauthorized disclosure of the terms of this Agreement shall be a material breach of this Agreement and shall provide Hospital with the option of pursuing remedies for breach or immediate termination of this Agreement in accordance with Subsection 4.b. hereof.

    c.    **Patient Information.** Neither Company nor any Company Staff shall disclose to any third party, except where permitted or required by law or where such disclosure is expressly approved by Hospital in writing, any patient or medical record information regarding Facility patients, and Company and Company Staff shall comply with all federal and state laws and regulations, and all bylaws, rules, regulations, and policies of Hospital and Facility regarding the confidentiality of such information. Company acknowledges that in receiving or otherwise dealing with any records or information from Hospital about Facility's patients receiving treatment for alcohol or drug abuse, Company and Company Staff are bound by the provisions of the federal regulations governing Confidentiality of Alcohol and Drug Abuse Patient Records, 42 C.F.R. Part 2, as amended from time to time.

    d.    **HIPAA Compliance.** Company agrees to comply with the applicable provisions of the Administrative Simplification section of the Health Insurance Portability and Accountability Act of 1996, as codified at 42 U.S.C. § 1320 through d-8 ("HIPAA"), and the requirements of any regulations promulgated thereunder, including, without limitation, the federal privacy regulations as contained in 45 C.F.R. Part 164, and the federal security standards as contained in 45 C.F.R. Part 142 (collectively, the "Regulations"). Company shall not use or further disclose any protected health information, as defined in 45 C.F.R. 164.504, or individually identifiable health information, as defined in 42 U.S.C. § 1320d (collectively, the "Protected Health Information"), other than as permitted by this Agreement and the requirements of HIPAA or the Regulations. Company will implement appropriate safeguards to prevent the use or disclosure of Protected Health Information other than as contemplated by this Agreement. Company will promptly report to Hospital and Facility any use or disclosures, of which Company becomes aware, of Protected Health Information in violation of HIPAA or the Regulations. In the event that Company contracts with any agents to whom Company provides Protected Health Information, Company shall include provisions in such agreements pursuant to which Company and such agents agree to the same restrictions and conditions that apply to Company with respect to Protected Health Information. Company will make its internal practices, books and records relating to the use and disclosure of Protected Health Information available to the Secretary to the extent required for determining compliance with HIPAA and the

C:\USERS\KMCGUIRE\KILLEN\CLINICA\CLINICA AGREEMENT FINAL.DOC
3/1/2004

Confidential - Not Subject to FOIA

TENET-OIG-00000316

Regulations. No attorney-client, accountant-client or other legal or equitable privilege shall be deemed to have been waived by Company, Hospital or Facility by virtue of this Subsection.

    c. **Survival.** The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

    9. **REQUIRED DISCLOSURES.** Company shall notify Hospital in writing within three days after any of the following events occurs:

    a. Any Company Staff's professional license or certification in the State or any other jurisdiction lapses or is denied, suspended, revoked, terminated, relinquished, or made subject to terms of probation or other restriction;

    b. An event occurs that substantially interrupts all or a portion of Company's or any Company Staff's ability to perform Company's or any Company Staff's obligations hereunder; or

    c. Company's or any Company Staff's conviction of a criminal offense related to health care or Company's or any Company Staff's listing by a federal agency as being debarred, excluded, or otherwise ineligible for federal program participation.

    10. **ARBITRATION.** Any dispute or controversy arising under, out of or in connection with, or in relation to this Agreement, or any amendment hereof, or the breach hereof shall be determined and settled by arbitration in Spalding County, Georgia in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration and applying the laws of the State. Any award rendered by the arbitrator shall be final and binding upon each of the parties, and judgment thereon may be entered in any court having jurisdiction thereof. The costs shall be borne equally by both parties. During the pendency of any such arbitration and until final judgment thereon has been entered, this Agreement shall remain in full force and effect unless otherwise terminated as provided hereunder. The provisions set forth herein shall survive expiration or other termination of this Agreement regardless of the cause of such termination.

    11. **INDEMNIFICATION.** Both parties mutually agree to indemnify and hold each other harmless from and against all liability, losses, damages, claims, causes of action, cost or expenses (including reasonable attorneys' fees), which directly or indirectly arise from the performance of the Services hereunder by the indemnifying party, its agents, servants, representatives and/or employees.

    12. **ENTIRE AGREEMENT; MODIFICATION.** This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, and all other communications between the parties relating to such

Confidential - Not Subject to FOIA

TENET-OIG-00000317

subject matter. This Agreement may not be amended or modified except by mutual written agreement.

13. **GOVERNING LAW.** This Agreement shall be construed in accordance with the laws of the State. The provisions set forth herein shall survive expiration or other termination of this Agreement regardless of the cause of such termination.

14. **COUNTERPARTS.** This Agreement may be executed in one or more counterparts, all of which together shall constitute only one Agreement.

15. **NOTICES.** All notices hereunder shall be in writing, delivered personally, by certified or registered mail, return receipt requested, or by overnight courier, and shall be deemed to have been duly given when delivered personally or when deposited in the United States mail, postage prepaid, or deposited with the overnight courier, addressed as follows:

| | |
|---|---|
| If to Hospital: | Spalding Regional Medical Center 601 South 8th Street |
| | Griffin, GA 30224 |
| | Attn: Chief Executive Officer |
| with a copy to: | Tenet Southern States, Atlanta Office |
| | 3350 Riverwood Parkway, Suite 1800 |
| | Atlanta, GA 30339 |
| | Attn: Regional Director - Operations |
| and: | Tenet Pennsylvania Market, Philadelphia Office |
| | Centre Square, West Tower |
| | 1500 Market Street, 34th Floor |
| | Philadelphia, PA 19102 |
| | Attn: Regional Counsel - Law Department |
| If to Company: | Hispanic Medical Management, Inc. |
| | 5139 Jimmy Carter Boulevard, Suite 205 |
| | Norcross, GA 30093 |
| | Attn: Tracey Cota, Chief Operating Officer |
| with a copy to: | William C. Tinsley II, Esq. |
| | Tinsley Bacon Tinsley, LLC |
| | 100 North Point Center East, Suite 440 |
| | Alpharetta, GA 30022 |

or to such other persons or places as either party may from time to time designate by notice pursuant to this Section.

C:\USERS\KMCGUIRE\KELLEE\CLINICA\CLINICA AGREEMENT FINAL.DOC
3/1/2004

10

Confidential - Not Subject to FOIA

TENET-OIG-00000318

16. **WAIVER.** A waiver by either party of a breach or failure to perform hereunder shall not constitute a waiver of any subsequent breach or failure.

17. **CAPTIONS.** The captions contained herein are used solely for convenience and shall not be deemed to define or limit the provisions of this Agreement.

18. **ASSIGNMENT; BINDING EFFECT.** Company shall not assign or transfer, in whole or in part, this Agreement or any of Company's rights, duties or obligations under this Agreement without the prior written consent of Hospital, and any assignment or transfer by Company without such consent shall be null and void. For purposes of this Agreement, the transfer of ownership of all or a portion of the shares, partnership interests, or other ownership interests of Company, in a single transaction or a series of transactions, which results in the replacement of 50% or more of the shareholders, partners, members or owners, as the case may be, of Company as they existed on the commencement date of this Agreement shall be deemed an assignment hereunder. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, representatives, successors and permitted assigns. This Agreement is assignable by Hospital without consent or notice.

19. **FINANCIAL OBLIGATION.** Neither Company nor any Company Staff shall incur any financial obligation on behalf of Hospital or Facility without the prior written approval of Hospital.

TENET HEALTHSYSTEM SPALDING, INC.
d/b/a Spalding Regional Medical Center

By: _____
John Quinn
President
Date: 3/2/04

HISPANIC MEDICAL MANAGEMENT, INC.
d/b/a Clinica de la Mama

By: _____
Tracey Cota
Chief Operating Officer
Date: 3-2-04

C:\USERS\KMCGUIRE\KILLIEEX\CLINICA\CLINICA AGREEMENT FINAL.DXX
3/1/2004

11

Confidential - Not Subject to FOIA

TENET-OIG-00000319

## Spalding Regional Medical Center

South Eighth Street
P.O. Drawer V
Griffin, GA 30224
tel: 770.228.2721

June 29, 2004

Ms. Tracey Cota
Chief Operating Officer
Hispanic Medical Management, Inc.
5139 Jimmy Carter Blvd., Suite 205
Norcross, GA 30093

Dear Tracey:

As follow up to our meeting yesterday, I have attached an agreement of Mutual Termination for your signature. This document will serve to terminate the agreement between Tenet HealthSystems Spalding, Inc. and Hispanic Medical Management, Inc. that we entered into as of April 1, 2004.

I want to thank you for the efforts that you have put forward to make this project work. I appreciate the frankness with which you and Ed have discussed the barriers that we have uncovered that will prevent this program from achieving the goals that were originally conceived. I believe that it is the best interest of both of our organizations to discontinue our efforts toward this project and terminate our agreement.

I would ask you to please review all of the work that your organization has completed relative to the terms of this agreement and present to me a final accounting of the services provided. Please do not hesitate to contact me if you have any questions or need to discuss this matter further.

Sincerely,

John Quinn
Chief Executive Officer

TeneT