## SERVICES AGREEMENT

**THIS SERVICES AGREEMENT** ("Agreement") is made and entered into as of the later of October 27, 2006, or the execution of the Agreement by both parties (the "Effective Date") between Hilton Head Health Systems, L.P., doing business as Hilton Head Regional Medical Center ("Hospital") and Hispanic Medical Management, Inc., doing business as Clinica de la Mama ("Company").

### RECITALS:

A. Hospital operates an acute care hospital known as Hilton Head Regional Medical Center ("Facility"), located in South Carolina ("State") and is in need of translation and administrative services for its Hispanic patients (the "Services").

B. Company employs or otherwise contracts with individuals duly qualified and experienced in furnishing the Services (collectively "Company Staff").

C. Company and Hospital agree that it is in the best interest of Hospital's ability to provide quality patient care in a cost-effective and efficient manner for Hospital to contract with an entity to provide the Services.

**NOW, THEREFORE**, for and in consideration of the recitals above and the mutual covenants and conditions contained herein, Hospital and Company agree as follows:

1. **COMPANY'S OBLIGATIONS.**

**a. Services.** While this Agreement is in effect, Company shall provide Services at Facility as are set forth in Exhibit A attached hereto and made a part hereof

**b. Performance.** The Services to be rendered hereunder shall be performed by Company Staff as may be employed by or under contract with Company. At all times while this Agreement is in effect, the Facility's Chief Executive Officer ("CEO") shall have the right to request removal of any such Company Staff if, in the CEO's best judgment, such removal is in the best interests of Hospital. Company hereby agrees to immediately remove any such individual upon receipt of the CEO's request

**c. Applicable Standards.** Company agrees that all Services provided pursuant to this agreement shall be performed in compliance with all applicable standards set forth by law or ordinance or established by the rules and regulations of any federal, state or local agency, department, commission, association or other pertinent governing, accrediting, or advisory body, including the Joint Commission on Accreditation of Healthcare Organizations ("Joint Commission") having authority to set standards for health care facilities.

d. **Records and Reports** Company shall record promptly and maintain all




TENET-OIG-00000047

information pertaining to Company's performance of duties under this Agreement. Company's records of billings and receipts relating to Services performed hereunder shall be available to Hospital upon request. Company agrees that all records and reports required by this Subsection shall be the exclusive personal property of Hospital.

e. **Use of Premises.** Company Staff shall not use, or knowingly permit any other person who is under their direction to use, any part of Facility's premises for any purpose other than the performance of Services for Facility pursuant to this Agreement.

f. **Representations and Warranties.** Company represents and warrants to Hospital, upon execution and while this Agreement is in effect, as follows:

(1) Neither Company nor any of Company Staff is bound by any agreement or arrangement which would preclude Company or any of Company Staff from entering into, or from fully performing the Services required under, this Agreement;

(2) No Company Staff's license or certification in the State or in any other jurisdiction has ever been denied, suspended, revoked, terminated, and voluntarily relinquished under threat of disciplinary action, or restricted in any way; and

(3) Neither Company nor any of Company Staff has ever been convicted of a criminal offense related to health care or listed by a federal agency as debarred, excluded or otherwise ineligible for federal program participation.

(4) All Company Staff shall provide interpretation services only and no Company Staff shall offer advice or make recommendations at any time regarding medical care to any patient or patient's family member.

2. **COMPANY'S COMPENSATION.**

a. **Fees.** For the Services rendered pursuant to this Agreement, Hospital shall pay Company as its sole compensation hereunder, as attached in Exhibit A, payable within 15 business days of receipt of written documentation of the performance of the Services provided, however, that no payment shall be made under this Subsection until the CEO has approved the documentation described in Subsection 1.d. Notwithstanding the foregoing, no compensation shall be payable to Company for any Services for which Company has not submitted such documentation as reasonably required by Hospital, including, without limitation, the IRS Form W-9 "Request for Taxpayer Identification Number and Certification" and the documentation provided for under Subsection 1.d. of this Agreement.

b. **Entire Compensation.** Company shall have the sole responsibility to compensate Company Staff. Company reserves the right, in its sole discretion, to determine the compensation payable to each Company Staff Member. Company hereby agrees to indemnify and hold Hospital harmless from any and all claims, costs and/or liability suffered or incurred by Hospital in connection with any claims for compensation by Company Staff for Services



TENET-OIG-00000048

Rendered hereunder. The indemnification obligations herein stated in this Subsection shall survive the termination and/or expiration of this Agreement.

3. **TERM.** The initial term of this Agreement ("Initial Term"), shall be one (1) year commencing on the Effective Date. At the end of the Initial Term and any Term Extension (as defined herein), the term of this Agreement may be extended for an additional period of one year (a "Term Extension"), but only upon mutual written agreement of the parties. As used herein, "Term" shall mean the period of time beginning on the Effective Date and ending on the last day of either the Initial Term or the last Term Extension, as applicable.

4. **TERMINATION.**

**a. Termination Without Cause.** Either party may, in its sole discretion, terminate this Agreement without cause by giving the other party at least ninety (90) days' prior written notice.

**b. Termination for Breach.** Either party may terminate this Agreement upon breach by the other party of any material provision of this Agreement, provided such breach continues for fifteen (15) days after receipt by the breaching party of written notice of such breach from the non-breaching party.

**c. Immediate Termination by Hospital.** Hospital may terminate this Agreement immediately by written notice to Company upon the occurrence of any of the following:

(1) the failure of Company or Company Staff to make a timely disclosure required pursuant to Section 9 hereof;

(2) conduct by Company or any Company Staff which, in the sole discretion of Hospital, could affect the quality of professional care provided to Facility patients, the performance of duties required hereunder, or which could be prejudicial or adverse to the best interest and welfare of Facility or its patients;

(3) confidentiality provisions hereof; breach by Company or any Company Staff of any of the

(4) failure by Company to maintain the insurance required under this Agreement;

( 5) closure of Facility, cessation of the patient care operations, or sale of Facility, or of all, or substantially all, of Facility's assets; or

(6) Company or any of Company Staffs conviction of a criminal offense related to health care or Company or any Company Staffs listing by a federal agency as being debarred, excluded, or otherwise ineligible for federal program participation.



TENET-OIG-00000049

(7) Company may cure such breach caused by any Company Staff under this Subsection 4.c.(4) by immediately terminating all employment and other Company-based professional and business relationships with such Company Staff and preventing said Company Staff from providing any Services hereunder.

c. **Termination for Changes in Law.** In the event that any governmental or nongovernmental agency, or any court or administrative tribunal passes, issues or promulgates any new, or change to any existing, law, rule, regulation, standard, interpretation, order, decision or judgment (individually or collectively, "Legal Event"), which a party (the "Noticing Party") reasonably believes (i) materially and adversely affects either party's licensure, accreditation, certification, or ability to refer, to accept any referral, to present a bill or claim, or to receive payment or reimbursement from any governmental or non-governmental payor, or (ii) indicates a Legal Event with which the Noticing Party desires further compliance, then, in either event, the Noticing Party may give the other party thirty (30) days prior written notice of its intent to amend or terminate this Agreement. Notwithstanding the foregoing, the Noticing Party may propose an amendment to the Agreement to take into account the Legal Event, and, if accepted by the other party prior to the end of the thirty (30) day notice period, the Agreement shall be amended as of the date of such acceptance and if not amended shall automatically terminate.

d. **Termination During the First Twelve Months of Initial Term.** In the event this Agreement is terminated during the first twelve months of the Initial Term, the parties shall be prohibited from entering into an arrangement for the Service with each other until after the expiration of the first 12 months of the Initial Term. The provisions of this Subsection shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

e. **Effect of Termination.** As of the effective date of termination of this Agreement, neither party shall have any further rights nor obligations hereunder except: (a) as otherwise provided herein; (b) for rights and obligations accruing prior to such effective date of termination; and (c) arising as a result of any breach of this Agreement.

5. **COMPANY'S STATUS.** In performing the Services, Company and each Company Staff are acting as independent contractors, and neither Company nor Company Staff shall be considered an employee of Hospital. Hospital shall not exercise any control or direction over the manner or method by which Company Staff provides the Services. However, Company shall require all Company Staffs to perform at all times in accordance with currently approved methods and standards of practice for Services in the medical community. As independent contractors, Company and Company Staff retain the right to engage in the private practice of medicine, and nothing in this Agreement shall be interpreted as limiting or restricting that right in any way. The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.





Confidential - Not Subject to FOIA



TENET-OIG-00000050

6. **Insurance.**

a. Company shall secure and maintain at all times during the Term, at Company's sole expense, professional liability insurance covering Company, all Company Staffs and all of Company's employees, with a carrier licensed to do business in the State and having at least an "A" BEST rating, at the following limits:

$1,000,000 per claim/occurrence and $3,000,000 aggregate

Such insurance shall not be cancelable except upon 30 days' prior written notice to Hospital. Such coverage shall be primary and non-contributory. Company shall annually provide Hospital a certificate of insurance evidencing such coverage and coverage extensions. This coverage shall be either (1) on an occurrence basis or (2) on a claims-made basis. If the coverage is on a claims-made basis, Company hereby agrees that prior to the effective date of termination of Company's current insurance coverage, Company shall purchase, at Company's sole expense, either a replacement policy annually thereafter having a retroactive date no later than the Effective Date or unlimited tail coverage in the above stated amounts for all claims arising out of incidents occurring prior to termination of Company's current coverage or prior to termination of this Agreement and Company shall provide Hospital a certificate of insurance evidencing such coverage.

7. **Access to Books and Records.** If the value or cost of Services rendered to Hospital pursuant to this Agreement is $10,000 or more over a 12-month period, in accordance with section 1861(v)(1)(I) of the Social Security Act, Company agrees that at least for four (4) years after the furnishing of such Services, Company shall, upon written request, make available to the Secretary of the United States Department of Health and Human Services (the "Secretary"), the Comptroller General of the United States, or their respective duly-authorized representatives, such books, documents, and records as may be necessary to certify the nature and extent of the cost of such Services. The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.

8. **Confidentiality.** Company and Company Staff agree to maintain and hold as confidential and to not disclose the terms of this Agreement or any confidential or proprietary information that Company or Company Staff may be provided during the term of this Agreement to any other person (with the exception of Company's or any Company Staff's legal counsel, accountant or financial advisors), unless disclosure thereof is required by law or otherwise authorized by this Agreement or consented to in writing by Hospital. With respect to any patient or medical record information regarding Hospital patients, Company and Company Staff shall comply with all federal and state laws and regulations, and all bylaws, rules, regulations, and policies of Hospital and its medical staff, regarding the confidentiality of such information, including, without limitation, all applicable provisions and regulations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). The provisions set forth herein shall survive expiration or other termination of this Agreement, regardless of the cause of such termination.



TENET-OIG-00000051

9. **Arbitration.** Any dispute or controversy arising under, out of or in connection with, or in relation to this Agreement, or any amendment hereof, or the breach hereof shall be determined and settled in the county where the Hospital is physically located, in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration and applying the laws of the State. Any award rendered by the arbitrator shall be final and binding upon each of the parties, and judgment thereon may be entered in any court having jurisdiction thereof. The costs of arbitration shall be borne equally by both parties but the losing party shall pay the prevailing party's reasonable attorneys fees. The provisions set forth herein shall survive expiration or other termination of this Agreement.

10. **Indemnification.** Both parties mutually agree to indemnify and hold each other harmless from and against all liability, losses, damages, claims, causes of action, cost or expenses (including reasonable attorneys' fees), which directly or indirectly arise from the performance of the Services hereunder by the indemnifying party, its agents, servants, representatives and/or employees.

11. **Entire Agreement; Modification; Governing Law, Counterparts; Notices, Waiver; Binding Effect.** This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, and all other communications between the parties relating to such subject matter. This Agreement may not be amended or modified except by mutual written agreement. This Agreement shall be construed in accordance with the laws of the State and shall survive the expiration or other termination of this Agreement. This Agreement may be executed in one or more counterparts, all of which together shall constitute only one Agreement. All notices hereunder shall be in writing, delivered personally, by certified or registered mail, return receipt requested, or by overnight courier, and shall be deemed to have been duly given when delivered personally or when deposited in the United States mail, postage prepaid, or deposited with the overnight courier, addressed at the place identified on the signature page below. A waiver by either party of a breach or failure to perform hereunder shall not constitute a waiver of any subsequent breach or failure. Company shall not assign or transfer, in whole or in part, this Agreement or any of Company's rights, duties or obligations under this Agreement without the prior written consent of Hospital, and any assignment or transfer by Company without such consent shall be null and void. This Agreement is assignable by Hospital without consent or notice.

12. **Referrals.** The parties acknowledge that none of the benefits granted Company or any Company Staff hereunder are conditioned on any requirement that Company or any Company Staff make referrals to, be in a position to make or influence referrals to, or otherwise generate business for Hospital or its affiliates. The parties further acknowledge that no Company Staff is restricted from establishing staff privileges at, referring any patient to, or otherwise generating any business for, any other facility of Company-affiliated Company Staff's choosing.



TENET-OIG-00000052

13. **NON-DISCRIMINATION.** Company agrees to treat in a nondiscriminatory manner any and all patients receiving medical benefits or assistance under any federal health care program.

14. **COMPLIANCE OBLIGATIONS.** Company, has received, read, understood, and shall abide by *Tenet's Standards of Conduct*. The parties to this Agreement shall comply with Tenet's Compliance Program and Tenet's policies and procedures related to the Anti-Kickback Statute and the Stark Law. A summary of Tenet's Compliance Program and a link to Tenet's policies and procedures shall be provided to Company upon request. Further, the parties to this Agreement certify that they shall not violate the Anti-Kickback Statute and/or the Stark Law.

**HILTON HEAD HEALTH SYSTEMS LP**
**D/B/A HILTON HEAD REGIONAL MEDICAL CENTER**

By: ____________________
Name: Elizabeth Lamkin
Title: President and CEO
Date: 11/7/06
Address: 25 Hospital Center Boulevard
P. O. Box 21117
Hilton Head Island, SC 29925

**HISPANIC MEDICAL MANAGEMENT, INC,**
**D/B/A CLINICA DE LA MAMA**

By: Tracey Cota
Name: Tracey Cota
Title: COO
Date: 11-7-06
Address: 5127 Jimmy Carter Boulevard
Norcross, GA 30093







TENET-OIG-00000053

## EXHIBIT A
## DESCRIPTION OF DUTIES AND RESPONSIBILITIES

Staff and management services provided by Company shall include:

1. **Translation Services**: Company, as manager shall provide certified, bilingual Company Staff twenty-four(24) hours per day and seven (7) days per week as specified below to enable hospital physicians and staff medical and clerical personnel to understand Hispanic speaking patients so that they can perform medical services on the Hispanic patients at the Hospital. Translation services are to be provided in all necessary patient care areas; including but not limited to, Women's Health, Operative Services, and the Emergency Department.

    730 hours/ month @ $17.49/ hour $12,768
    One interpreter Monday through Friday , 24 hr/day
    One interpreter Saturday and Sunday, 24 hr/day
    Management Fee per month $ 1,750

    Documentation Required: Company Staff shall clock in and out from work at Facility's time clocks. Time records will be maintained by Hospital's Administration department. If during any month, Company Staff fail to clock a total of 730 hours, Hospital will deduct $17.49 per hour from Company's compensation for each hour Company is short.

2. **Eligibility Determination Services**: Obtain all necessary patient information to determine the eligibility of Hispanic children patients for Medicaid or Permanent Medicaid and adult Hispanic patients for Emergency Medical Assistance ("EMA"), Permanent Medicaid, or medically needy Medicaid from the State or from any other applicable third party to cover hospital Services.

    Fees per month for these services shall be based upon the following:
    64 hours per month @$30.00 /hour $ 1,920

    Documentation Required: Hospital's Women's Health Director will forward to Hospital's Administration Department the daily work sheets completed by the Company Staff that will show compliance with this duty.

3. **Other Services shall include:**
    a. Company shall provide pre-natal information work up on each mother at thirty-two (32) weeks to Hospital's Women's Health Director.
    b. Company shall provide complete information from company's records to Hospital's Admissions Department for pre-registration of each patient.
    c. Company will certify to Hospital's Health Information Management Department that all information required by the State for the baby's birth certificate is complete.

    Fees per month for these services shall be based upon the following:
    70 hours per month @ $20.00/hour $ 1,400

    Documentation required: company's compliance with "a." through "c." above will be tracked by Hospitals Women's Health Director, Hospital's Admissions Manager and Hospital's Health Information Management Director, respectively.

Confidential - Not Subject to FOIA

TENET-OIG-00000054